**STATE of Missouri, Respondent,**

v.

**Richard Duane BROWN, Appellant.**

No. 69520.

Supreme Court of Missouri,
En Banc.

Feb. 17, 1988.

Dan J. Pingelton, Columbia, for appellant.

William L. Webster, Atty. Gen., Elizabeth A. Levin, Asst. Atty. Gen., Jefferson City, Philip M. Koppe, Asst. Atty. Gen., Kansas City, for respondent.

RENDLEN, Judge.

Richard Brown (defendant) was convicted by a jury of second degree burglary and stealing property valued at $150 or more and sentenced as a persistent offender to consecutive ten year terms of imprisonment for each offense. The Missouri Court of Appeals, Western District, reversed the judgment, concluding that evidence establishing unexplained possession of recently stolen property is not sufficient to make a submissible case of burglary and stealing. We granted transfer to resolve the conflict between the western district's decision and prior Missouri cases, including the southern district's decision in the companion case of *State v. Brown*, 716 S.W.2d 436 (Mo. App.1986) [hereinafter *Brown II*; this Court's decision in *State v. Brown*, 708 S.W.2d 140 (Mo. banc 1986) will be referred to as *Brown I*]. We now determine the cause as though on original appeal, Mo. Const. art. V, § 10, and affirm.

In considering defendant's challenge to the sufficiency of the evidence, we view the evidence in the light most favorable to the state and accord the state the benefit of all reasonable inferences to be drawn therefrom. *State v. Guinan*, 665 S.W.2d 325, 327 (Mo. banc 1984). The evidence indicated that on October 19, 1981, at approximately 8:00 a.m., Ed Allison, the owner of the Cross Timbers True Value Hardware store, arrived at work and discovered that approximately $7,000 worth of hardware, clothing, and other merchandise had been stolen. The outside door of the beauty shop which adjoined and led into the hardware store was open, and bore various indicia of forced entry. Some of the missing merchandise was scattered about the street. Allison, his wife, and his daughter attempted to list the stolen property and reported the crime to Sheriff Kennedy of Hickory County.

On November 5, Sheriff Kennedy, Sheriff Hill of Dallas County, and Polk County Sheriff Simmons went to defendant's residence in Flemington, Missouri. Defendant invited the sheriffs inside his house and Sheriff Simmons placed him under arrest for "investigation" of an unrelated theft of some motor oil in Wheatland. Defendant explained that he had only five quarts of oil in the house and opened a padlocked door of a side room off the kitchen to reveal a

yellow plastic bag containing five quarts of Pennzoil. Sheriff Kennedy observed as well about three or four hundred items of hardware, most appearing new and some in their original packaging. He also noticed, in defendant's bedroom, "many, many items of clothing." At that point defendant informed the sheriffs that they were not to conduct a search of his house and requested that they leave, which they did.

Sheriff Kennedy, who suspected that defendant was connected with the Cross Timbers burglary as well as a hardware store burglary in Weableau, returned to defendant's residence on the morning of November 6 with a search warrant.[1] In executing that warrant Sheriff Kennedy seized various items, some of which were identified by the Allisons and their daughter as property stolen from the Cross Timbers hardware store on October 19. Some items still bore price tags or markings connecting them to Cross Timbers True Value and were identified on that basis; others were identified because they were the same as those missing from the store. The computer-coded tag on one blouse seized from defendant's residence indicated that it had not been sold, and neither the Allisons nor their daughter had ever seen defendant in the hardware store.

Defendant's evidence consisted solely of the testimony of Sheriff Simmons, who described the events at defendant's residence and noted the unusually large quantities of identical items in the side room.

▮ The basic legal principles involved in this appeal are well established and have been frequently stated in the decisions of our Missouri courts. " 'An inference of guilt is permissible from the unexplained possession of property recently stolen in a burglary, and the inference exists both as to the offense of burglary and of stealing.' " *State v. Arnold*, 566 S.W.2d 185, 188 (Mo. banc 1978) (quoting *State v. Cobb*, 444 S.W.2d 408, 414 (Mo. banc 1969)). To authorize an inference of guilt, the defendant's possession of the stolen property must not be too remote in time from the burglary, and must be personal, exclusive, conscious, and unexplained. *State v. Clark*, 438 S.W.2d 277, 279 (Mo.1969) (citing *State v. Durham*, 367 S.W.2d 619 (Mo. 1963)). What may be considered "recent," of course, must be determined from the facts of each particular case and "may vary from a few days to many months." *State v. Oliver*, 355 Mo. 173, 195 S.W.2d 484, 485 (1946). It has also been held that possession may be considered "unexplained" where the jury disbelieves the explanation urged by defendant. *Clark*, 438 S.W.2d at 279.

At least since *State v. Swarens*, 294 Mo. 139, 241 S.W. 934 (1922), we have consistently recognized that the inference to be drawn from the circumstances referred to is not a presumption of law, but is a permissible inference of fact which the jury may accept if convinced beyond a reasonable doubt of the defendant's guilt. We have been no less consistent, however, in holding that where the state has established that defendant has "unexplained possession of property recently stolen in a burglary[, the evidence] is sufficient to support a submission of both the burglary and stealing[,]" *State v. Miller*, 499 S.W.2d 496, 499 (Mo.1973), and the inference does not violate due process or infringe upon a defendant's privilege against compulsory self-incrimination, even when the inference is not bolstered by other evidence. *State v. Feeler*, 634 S.W.2d 484, 490 (Mo.App.1981); *State v. Eby*, 629 S.W.2d 515, 520 (Mo.App. 1981). *See also Barnes v. United States*, 412 U.S. 837, 93 S.Ct. 2357, 37 L.Ed.2d 380 (1973); *State v. Denison*, 352 Mo. 572, 178 S.W.2d 449, 455 [13, 14] (1944); Annot., 88 A.L.R.3d 1178 (1978).

▮ Defendant acknowledges this body of case law and does not contend on appeal that his possession of the stolen property was temporally remote or explained; rather, defendant attempts to avoid the language of the decisions by pointing to cer-

---

1. The facts concerning the Weaubleau burglary are set out in the companion cases of *State v. Brown*, 708 S.W.2d 140 (Mo. banc 1986) and *State v. Brown*, 716 S.W.2d 436 (Mo.App.1986).

tain evidence in those cases other than the unexplained possession of recently stolen property. Defendant's effort to distinguish precedent stretches credulity in certain instances; *see, e.g., Clark,* 438 S.W.2d at 277; *State v. Hagerman,* 361 Mo. 994, 238 S.W.2d 327 (1951); *Denison,* 178 S.W.2d 449; *State v. Morse,* 514 S.W.2d 375 (Mo.App.1974); but in any event we believe those cases mean what they say. The southern district, addressing nearly identical evidence in a companion case, correctly relied upon the applicable precedent and affirmed defendant's conviction. *Brown II,* 716 S.W.2d at 436. Defendant's challenge to the sufficiency of the evidence is ruled against him.

In his other point on appeal defendant protests the denial of his motion to suppress evidence of the items seized during the search and seizure. In *Brown I,* this Court rejected defendant's challenges to the constitutionality of the same search and seizure involved here, and the same affidavits, warrant application, and search warrant. 708 S.W.2d at 140.

While acknowledging that the arguments and circumstances surrounding the search in *Brown I* are identical to those presented here, defendant seeks to distinguish this case because there was no transcript made of the suppression hearing.[2]

In support of his contention defendant secured the affidavit of the court reporter, who states that "during a recess in [the] trial, both appellant's (Richard Brown) trial attorney and the prosecutor met with the judge in chambers to argue in the suppression hearing. At that time, no record was made of the proceeding." The state responded by filing an affidavit in which the prosecuting attorney states that the motion to suppress only raised "issues relating to the sufficiency of the search warrant and its supporting documents, ... that defendant through his attorney never offered testimony and no testimony was presented [at the hearing]."

■ We initially note that affidavits such as that offered by defendant here are

not considered as part of the record on appeal. *State v. Hoopes,* 534 S.W.2d 26, 32 (Mo. banc 1976). That is so because it is the obligation of the party desiring to create a record to do so at the time the statement or event occurred, *id.,* and to furnish that record on appeal. Rule 30.04. Nonetheless, the affidavits presented here indicate that the transcript defendant failed to request in timely fashion would not have contained *evidence* pertinent to resolution of the issues he now seeks to raise. He has, therefore, not been effectively deprived of his right of appeal.

Defendant's other objections to the denial of his motion to suppress are resolved by this Court's opinion in *Brown I,* and we need not repeat here the lengthy discussion of the issues contained in that case. Defendant's point is denied.

Judgment affirmed.

BILLINGS, C.J., BLACKMAR, DONNELLY, WELLIVER and HIGGINS, JJ., and CRIST, Special Judge, concur.

ROBERTSON, J., not sitting.

---

**2.** In *Brown I* the transcript of the suppression hearing, if it existed, was not included in the record on appeal. 708 S.W.2d at 145.