**In the Interest of N.R.C., Appellant,**

v.

**JUVENILE OFFICER, Respondent.**

No. WD 69088.

Missouri Court of Appeals,
Western District.

Feb. 10, 2009.

Megan Roth, Kansas City, MO, for Appellant.

James E. Herbertson, Kansas City, MO, for Respondent.

Before VICTOR C. HOWARD, P.J., JOSEPH M. ELLIS, Judge, and ALOK AHUJA, Judge.

VICTOR C. HOWARD, Presiding Judge.

N.R.C., a juvenile, appeals from the judgment of the trial court sustaining the Juvenile Officer's petition, which alleged that N.R.C. committed acts which would constitute the crimes of second degree burglary and stealing if committed by an adult. On appeal, N.R.C. claims that the trial court erred in overruling his motion for dismissal at the close of the Juvenile Officer's evidence. The judgment is reversed and remanded in part and affirmed in part.

**Factual and Procedural Background**

On August 16, 2007, police officers detained N.R.C., who matched the description of an individual seen near a home that was recently burglarized. The Juvenile Officer filed a petition alleging N.R.C. should be taken under the jurisdiction of the court because he had committed acts which would constitute the crimes of second degree burglary and stealing items worth $500.00 or more.[1] After a trial, N.R.C. was found to have done those acts and the court took jurisdiction over N.R.C.

At trial, Bobby Fitzgerald testified that, upon arriving home from work at approximately 5:30 p.m. on August 16, 2007, he discovered that the back door of his home had been kicked in and his home had been ransacked. He further testified that he had not given anyone permission to enter the home while he was gone. A police officer was already present at the scene when Fitzgerald arrived because a neighbor, Terry Wright, had called the police.

Wright, who lived about one block away from Fitzgerald's home, testified that near 5:30 p.m. on August 16, he saw three kids running across the street. Wright stated that two of the individuals were young black males and that the third person was a young white male. He also noticed that one of the black males was carrying what Wright described as a black and white box. After seeing the boys come from a vacant lot and run across the street while carrying a box, Wright suspected that a crime may have been committed and contacted the police.

Robert Guffey, an officer with the Kansas City, Missouri, Police Department who was responding to Wright's call, saw a group of boys about two blocks from Fitzgerald's home that matched Wright's description. Officer Guffey testified that he saw N.R.C. holding a white, HP PhotoJet box, and that as Officer Guffey approached the boys, N.R.C. dropped the box and "acted like he didn't have it." Officer Guffey detained the boys until identifications of the boys and the property in the box could be made.

Another officer, Officer Barbee, brought Wright to the area where Officer Guffey had detained the boys. Wright identified the white male, N.R.C., as one of the individuals he had seen crossing the street earlier. Officer Barbee also recovered the box and inventoried its contents. The items in the box included several watches,

1. The allegations of the petition cited section 569.170, RSMo 2007, which defines burglary in the second degree as "knowingly enter[ing] unlawfully or knowingly remain[ing] unlawfully in a building or inhabitable structure for the purpose of committing a crime therein," and section 570.030, RSMo 2007, which defines stealing as the appropriation of the property of another "with the purpose to deprive him or her thereof, either without his or her consent or by means of deceit or coercion."

various articles of jewelry, and a printer for a digital camera. Fitzgerald identified the items as his property.

At the close of the Juvenile Officer's evidence, N.R.C.'s counsel made a motion to dismiss the petition, arguing that the evidence was insufficient to prove N.R.C. committed acts constituting second degree burglary or stealing property worth $500.00 or more. The court denied the motion and sustained the allegations of the Juvenile Officer's petition, finding that N.R.C. had committed acts constituting second degree burglary and stealing. The court committed N.R.C. to the custody of Family Court Services but suspended execution of the commitment and placed N.R.C. in the custody of his mother, on probation under the supervision of Family Court Services. This appeal by N.R.C. followed.

## Standard of Review

An appellate court reviews juvenile proceedings "like any other court-tried case, *i.e.*, the judgment will not be disturbed unless it is against the weight of the evidence or it erroneously declares or erroneously applies the law." *N.J.K. v. Juvenile Officer*, 139 S.W.3d 250, 259 (Mo.App. W.D.2004). In determining the sufficiency of the evidence, an appellate court "view[s] the evidence and reasonable inferences which may be drawn therefrom in the light most favorable to the verdict and [it] ignore[s] all evidence and inferences to the contrary." *C.L.B. v. Juvenile Officer*, 22 S.W.3d 233, 236 (Mo.App. W.D.2000). "Determinations as to witness credibility and the weight to be given testimony are left to the trial court, and the court is free

2. Because the petition alleged acts constituting the class C felony of stealing, the Juvenile Officer had the additional burden of proving that the value of the property stolen was $500.00 or more. § 570.030.3(1). According to section 570.020(1), RSMo 2007, value is

to believe none, part, or all of the testimony." *N.J.K.*, 139 S.W.3d at 259.

## Discussion

In his sole point on appeal, N.R.C. contends that the trial court erred in overruling his motion to dismiss the Juvenile Officer's petition. N.R.C. claims that the evidence presented at trial was insufficient to prove N.R.C.'s guilt beyond a reasonable doubt in that the evidence failed to establish that N.R.C. entered Fitzgerald's home and took his property, or that the property taken from Fitzgerald's home had a value of $500.00 or more as required by statute.[2]

■ N.R.C.'s first argument focuses on the element of value relating to the class C felony stealing charge. N.R.C. claims that the evidence presented by the Juvenile Officer at trial was insufficient to prove beyond a reasonable doubt that the value of the items stolen from Fitzgerald's home was $500.00 or more. The only evidence of value came from Fitzgerald, whose testimony on direct examination was as follows:

Q: What was the value of the merchandise that was taken from your home?

A: Well, the value, I really don't know, sir.

Q: Was it more than $500?

A: You could say that, yes, sir.

On cross-examination, Fitzgerald testified that he "couldn't tell" N.R.C.'s counsel the total value of the items, because they were all gifts for which he did not have receipts. When asked if it was possible that the total value was less than $500, Fitzgerald responded, "Maybe."

"the market value of the property at the time and place of the crime, or if such cannot be satisfactorily ascertained, the cost of replacement of the property within a reasonable time after the crime."

N.R.C. argues that his case is similar to a case in which an appellate court found that there was insufficient evidence to support a conviction for felony stealing. *See Woolford v. State*, 58 S.W.3d 87 (Mo.App. E.D.2001). In *Woolford*, the applicable statute required proof that the value of the stolen items was $750.00 or more. *Id.* at 89. The owner of the property testified that the value of the items "probably" exceeded $750.00 and "guessed" that $750.00 was a fair approximation of the value. *Id.* at 90. The court concluded that this testimony was "too indefinite to constitute substantial evidence from which a jury could reasonably decide, beyond a reasonable doubt, that the market value of the [property] at the time and place of the crime was at least $750.00." *Id.*

As the court in *Woolford* stated, the owner of stolen property is competent to testify regarding the value of his or her personal property. *Id.* Additionally, the court noted the general rule that the testimony of the property owner alone, " 'if deemed credible by the [trier of fact], may be considered sufficient for conviction, though that testimony is uncertain or inconsistent.' " *Id.* (quoting *State v. Platt*, 496 S.W.2d 878, 881 (Mo.App.1973); 23 C.J.S. *Criminal Law* § 1097). However, the court also stated that it would "not support a conviction based on probabilities and speculation. 'A conviction cannot be based on the uncorroborated testimony of a single witness if it is so indefinite ... that it would be unsafe to rest a conviction thereon.' " *Id.* (quoting 23 C.J.S. *Criminal Law* § 1097).

The testimony provided by Fitzgerald is indistinguishable from the testimony at issue in *Woolford*. Fitzgerald's statements that the value could be more than $500.00, but also may be less than $500.00 were necessarily based on "probabilities and speculation" because Fitzgerald conceded on both direct and cross-examination that he did not know the value of the property. Therefore, because the only evidence regarding the element of value was Fitzgerald's indefinite testimony, we conclude that there was insufficient evidence to support a finding, beyond a reasonable doubt, that the value of the property was $500.00 or more. Without sufficient evidence to establish value, N.R.C. could not be found to have committed acts constituting felony stealing and, therefore, the court's finding in that regard must be reversed.

■ However, our reversal of the finding regarding felony stealing does not end the analysis of N.R.C.'s allegation of error. As the court noted in *Woolford*, a reversal of a felony stealing conviction "does not mandate ... discharge on this count." *Id.* When a conviction for a greater offense is reversed due to insufficient evidence, a court may enter a conviction on a lesser-included offense "if the evidence was sufficient for the [trier of fact] to find each of the elements of a lesser-included offense and the [trier of fact] was required to find those elements in reaching its verdict on the greater offense." *Id.* Section 570.030.8 provides that if no penalty is specified, stealing constitutes a class A misdemeanor. Furthermore, since misdemeanor stealing is a lesser-included offense of felony stealing, the trial court necessarily had to find that each element of misdemeanor stealing was established in order to find N.R.C. had committed acts constituting felony stealing. *See Woolford*, 58 S.W.3d at 90. Because N.R.C. challenges the sufficiency of the evidence on elements other than the value element of the crime of stealing, we must determine whether there was sufficient evidence for the trial court to find that the elements of

misdemeanor stealing were established.[3]

N.R.C. next claims that there was insufficient evidence to prove that he "knowingly" entered an inhabitable structure unlawfully, as required by section 569.170, or that he had the "purpose" of depriving Fitzgerald of his property, as required by section 570.030. In making his argument, N.R.C. concedes that " '[a]n inference of guilt is permissible from the unexplained possession of property recently stolen in a burglary, and the inference exists both as to the offense of burglary and of stealing.' " *State v. Brown,* 744 S.W.2d 809, 811 (Mo. banc 1988) (quoting *State v. Arnold,* 566 S.W.2d 185, 188 (Mo. banc 1978)) (internal quotations omitted). Instead of arguing that there was an explanation for his possession of Fitzgerald's property, N.R.C. cites *State v. Langdon,* 110 S.W.3d 807 (Mo. banc 2003), for the proposition that unexplained possession alone does not establish an inference of the knowledge and purpose elements required to find N.R.C. had committed acts that constituted burglary in the second degree and stealing.

In noting that "mere unexplained possession of recently stolen property does not give rise to an inference that the possessor is guilty," the court in *Langdon* was referring to the crime of receiving stolen property, rather than burglary or stealing. 110 S.W.3d at 812. In contrast, *Brown* makes it clear that evidence of unexplained possession of property recently stolen in a burglary alone is sufficient to make a submissible case of burglary and stealing, so long as the possession is not "too remote in time from the burglary, and [is] personal, exclusive, conscious, and unexplained." *See* 744 S.W.2d at 811. Officer Guffey testified that he saw N.R.C. holding the white box filled with Fitzgerald's property almost immediately after the burglary occurred. No attempt was made at trial to explain N.R.C.'s possession of the box. However, because Wright testified that he saw one of the black males carrying the box, it is arguable that N.R.C.'s possession of the box was not exclusive. In a case such as this, where " 'possession is not exclusive but is joint with another person, there must be some evidence of [the] defendant's guilt in addition to' " the permissible inference arising from unexplained possession. *State v. Kelley,* 674 S.W.2d 216, 220 (Mo.App. S.D.1984) (quoting *State v. Leach,* 633 S.W.2d 754, 756 (Mo.App. S.D.1982)).

N.R.C. argues that, despite the evidence of unexplained possession, there is no sufficient additional evidence connecting N.R.C. with the crime because no one saw him entering or exiting Fitzgerald's home, and because Wright could not positively identify N.R.C. as the boy he saw running across the street. N.R.C.'s first assertion, that no one saw him enter or exit the home, ignores the rule that a defendant's participation in a crime " 'may be inferred and the evidence need not directly reflect the accused in the act of committing the crime with which he is charged.' " *C.L.B.,* 22 S.W.3d at 240 (quoting *State v. Oliver,* 791 S.W.2d 782, 788 (Mo.App. E.D.1990)). The inference of participation " 'may be drawn from the presence of the accused, conduct before and after the offense, and companionship before and after the offense.' " *Id.* (quoting *Oliver,* 791 S.W.2d at 788).

Although Wright testified that he could not positively identify N.R.C. as the boy he had seen crossing the street,

---

**3.** "A person commits the crime of stealing if he or she appropriates property or services of another with the purpose to deprive him or her thereof, either without his or her consent or by means of deceit or coercion." § 570.030.1.

Wright stated that the boy he saw was young, white, had blonde hair, and was crossing the street with two young, black males. He also testified that one of the black males was carrying a box. Wright saw the boys minutes after the burglary occurred as they were crossing a street approximately one block away from the scene of the crime. Minutes later, Officer Guffey saw N.R.C., who matched Wright's description, two blocks away from the scene, holding a white box, standing with a group of boys that included two young black males and one Hispanic male. Finally, Officer Guffey testified that as he approached the boys, N.R.C. "dropped [the box] and then pretty much acted like he didn't have it."

These circumstances, along with the unexplained possession of Fitzgerald's property, constitute sufficient evidence to support an inference of guilt for the crimes of burglary in the second degree and stealing. Therefore, the court's finding related to second degree burglary is affirmed. Due to a lack of sufficient evidence regarding the value of the stolen property, the court's finding that N.R.C. committed acts constituting felony stealing cannot be upheld. However, because the trial court was required to find the elements of misdemeanor stealing, and there was sufficient evidence to establish those elements, we find N.R.C. committed acts that constitute the class A misdemeanor of stealing and remand to the trial court with directions to amend its judgment accordingly and to conduct a dispositional hearing to determine what, if any, changes need be made to its prior judgment.

All concur.