**In the Interest of: J.M.G., Appellant,**

v.

**JUVENILE OFFICER, Respondent.**

**No. WD 70402.**

Missouri Court of Appeals, Western District.

Dec. 8, 2009.

Nancy A. McKerrow, Assistant State Public Defender, Columbia, MO, for Appellant.

Teri L. Armistead, Family Court Services, Juvenile Division, Columbia, MO, for Respondent.

Before Division III: MARK D. PFEIFFER, Presiding Judge, and KAREN KING MITCHELL and CYNTHIA L. MARTIN, Judges.

MARK D. PFEIFFER, Presiding Judge.

J.M.G. appeals from the juvenile court's (trial court) judgment finding the allegations of the juvenile officer's first-amended petition to be true and committing him to the Department of Youth Services (DYS) until he is eighteen. The trial court concluded that J.M.G. had committed acts which, if committed by an adult, would constitute felony child molestation pursuant to section 566.067 RSMo 2000. In his sole point on appeal, J.M.G. asserts that the trial court erred because there was

insufficient reliable evidence to support its judgment. We affirm.

## Statement of Facts

The facts, in the light most favorable to the judgment of the trial court, *N.R.C. v. Juvenile Officer*, 276 S.W.3d 883, 886 (Mo. App. W.D.2009), are as follows: In August of 2008, the mother of J.D.A.G. and J.D.O.G.,[1] Brenda, discovered the two boys playing with their pants down in their backyard. Upon further inquiry, the mother learned that the boys were engaging in "naked time."[2] Brenda was told that during "naked time" J.D.A.G.'s older brother J.D.O.G. would "stick his pee in [J.D.A.G.'s] butt." She testified that J.D.A.G. also told her that both he and J.D.O.G. had been taught about "naked time" by J.M.G.,[3] their half-brother. J.M.G. shared a mutual father with J.D.O.G. and J.D.A.G., but J.M.G. did not reside in the same home as J.D.O.G. and J.D.A.G. Instead, J.M.G. resided with his paternal grandparents, who had adopted J.M.G. The paternal grandparents' home was located approximately a quarter of a mile from the home where J.D.O.G. and J.D.A.G. resided. Prior to the events in question, the two younger boys were frequent visitors to their grandparents' home.

Around the time that the mother discovered the boys playing in the backyard, another incident occurred which strained relations within the larger family. Brenda's dog attacked one of her goats. As a result, Brenda decided to put the dog down. Upon hearing of this, J.M.G., who had always wanted the dog, walked to Brenda's house and retrieved the dog without Brenda's knowledge. Brenda went to the paternal grandparents' home to retrieve the dog, and a heated conflict between Brenda and the grandparents occurred that involved physical altercation.

Soon after the conflict over the dog, Brenda reported the situation with her boys to the sheriff's office and both J.D.O.G. and J.D.A.G. participated in forensic interviews with Lynne Dresser, a counselor at the Rainbow House Child Advocacy Center in Columbia, Missouri. In those interviews, J.D.A.G. stated that J.M.G. had sodomized J.D.A.G. J.D.A.G. further shared that after this incident occurred, it hurt him to wipe his bottom. J.D.O.G., the older brother, was unresponsive to questions about "naked time." No S.A.F.E.[4] exam was conducted, and the record reveals no further interviews of either child. After these sessions, a deputy sheriff interviewed J.M.G. In the interview, J.M.G. maintained that he did not assault or molest either of his brothers.

An adjudication hearing was held on October 22, 2008. In this hearing, J.D.A.G. testified at length about the incident in question. Lynne Dresser also testified about the results of her forensic interview with J.D.A.G. She noted that the testimony of J.D.A.G. was consistent with a person of his age suffering this form of abuse. The video of J.D.A.G.'s forensic interview was also admitted into evidence. The juvenile court found that J.M.G. had committed a

1. At the time these incidents occurred, J.D.A.G. was four and J.D.O.G. was six.

2. This was not the first time that J.D.A.G. had mentioned "naked time." Prior to the occasion when he was discovered with his brother, J.D.A.G. had complained to his grandmother that J.D.O.G. made him participate in "naked time." He did not mention J.M.G. at this time. The grandmother testified that she passed the information on to the boys' mother but did not pursue it further.

3. J.M.G. was fifteen at the time of the incident and sixteen at the time of trial.

4. S.A.F.E. is an acronym for Sexual Assault Forensic Exam.

violation of section 566.067 and committed him to DYS until he turns eighteen.

### Standard of Review

We review juvenile proceedings as we review other court-tried cases and, as such, the judgment will not be reversed unless there is no substantial evidence to support the judgment, the judgment is against the weight of the evidence, or the judgment erroneously declares or applies the law. *N.R.C.*, 276 S.W.3d at 886. When determining the sufficiency of the evidence, an appellate court " 'view[s] the evidence and reasonable inferences which may be drawn therefrom in the light most favorable to the verdict and [it] ignore[s] all evidence and inferences to the contrary.' " *Id.* (quoting *C.L.B. v. Juvenile Officer*, 22 S.W.3d 233, 236 (Mo.App. W.D. 2000)). Furthermore, we defer to the juvenile court in determining witness credibility and the weight to be given to witness testimony. *Id.*

### The Child Victim's Testimony

■ In his sole point on appeal, appellant J.M.G. maintains that the trial court erred because J.D.A.G.'s testimony was insufficient evidence to prove J.M.G. guilty beyond a reasonable doubt. Appellant J.M.G. argues that J.D.A.G.'s statements in both the trial and video interview were inconsistent, contradictory, and lacked corroboration. Accordingly, J.M.G. argues that J.D.A.G.'s statements cannot serve as the evidentiary foundation for the trial court's judgment.[5]

■ We begin by noting that a victim's uncorroborated statements are, in and of themselves, sufficient evidence to support a criminal conviction. *State v. Miller*, 250 S.W.3d 736, 744 (Mo.App. S.D. 2008) ("Uncorroborated testimony of the victim in a sexual assault case is sufficient to sustain a conviction."). Corroboration is only required when the victim's testimony is " 'so contradictory and in conflict with physical facts, surrounding circumstances and common experience, that its validity is thereby rendered doubtful.' " *Id.* at 745 (quoting *State v. Moore*, 194 S.W.3d 387, 391 (Mo.App. S.D.2006)). For the corroboration rule to be invoked, the inconsistencies must be such that they " 'make the testimony inherently self-destructive.' " *Id.* (quoting *State v. Paulson*, 220 S.W.3d 828, 833 (Mo.App. S.D.2007)). Discrepancies within the testimony must be excessive and the inconsistencies and contradictions "must relate directly to essential elements of the case." *Id.*

■ In general, out-of-court statements are not admissible as evidence. However, Missouri recognizes a statutory exception for recording the statements of children under the age of fourteen who have been a victim of a sexual crime. § 491.075 RSMo Cum.Supp.2008. These recorded statements are admissible if the trial court concludes that the "time, content and circumstances of the statement provide sufficient indicia of reliability," and the witness must either testify in court, be unavailable to testify, or show that testifying in court would be traumatic to the witness.[6] *Id.*

---

5. This argument ignores the fact that a child forensic expert witness, Lynne Dresser, testified at trial as well. Dresser testified, in part, that J.D.A.G. referenced details of sexual misconduct inconsistent with a child who had been coached.

6. If the out-of-court statements are deemed testimonial, then the Missouri Supreme Court

has made clear that the defendant is entitled to cross-examine the witness. *State v. Justus*, 205 S.W.3d 872, 880–81 (Mo. banc 2006). If the witness can demonstrate through a hearing that encountering the defendant would be traumatic, then the child witness may testify by video deposition. However, the defendant, through their counsel, must be provided an

In evaluating these statements, trial courts utilize a "totality of the circumstances test" and apply a non-exclusive list of the factors outlined in *Idaho v. Wright,* 497 U.S. 805, 821, 110 S.Ct. 3139, 111 L.Ed.2d 638 (1990). *In the Interest of N.J.K. v. Juvenile Officer,* 139 S.W.3d 250, 256 (Mo.App. W.D.2004). The courts look at (1) the spontaneity and consistency of the statement; (2) the mental state of the minor giving the statement; (3) whether the minor has a motive to fabricate; and (4) whether the minor uses terms unexpected of a child of that age. *Id.* (citing *State v. Redman,* 916 S.W.2d 787, 791 (Mo. banc 1996)).

In the present case, J.M.G. did not request a hearing under section 491.075, and he acknowledges that the trial court was not under any obligation to, *sua sponte,* formally conduct such a hearing before admitting the video into evidence. However, J.M.G. argues that this court is required to follow the admissibility standards outlined in section 491.075 in evaluating whether or not the evidence is sufficiently reliable (i.e. credible) to support the trial court's judgment. Appellant fails to support this contention with case precedent, citing only to *State v. Phillips,* 585 S.W.2d 517 (Mo.App. S.D.1979). However, this case only reinforces the proposition that a judgment cannot rest solely on witness testimony if that testimony is "contradictory and in conflict with physical facts, surrounding circumstances, and common experience so as to be so unconvincing and improbable that it is extremely doubtful[.]" *Id.* at 520. We can find no case precedent that supports J.M.G.'s argument that, under the procedural posture of this case, we are required to engage in a credibility analysis under a stat-

utory admissibility of evidence standard. In fact, case precedent supports the opposite conclusion. *State v. Schuster,* 92 S.W.3d 816, 820 (Mo.App. S.D.2003) (holding that an appellant who neglected to object to the introduction of a video at trial failed to preserve the introduction of that video for appellate review).

In the present case, the issue of *admissibility* of the child victim's out-of-court statement has not been preserved and is not before this court. Appellant J.M.G., therefore, is effectively requesting that this court engage in a *credibility* analysis of J.D.A.G.'s out-of-court statement to determine whether the trial court's judgment is based upon competent, reliable, and substantial evidence. There is ample illustration in the record of this case to justify deference to the trial court regarding the credibility of the witness testimony complained of by appellant J.M.G., and our analysis of the evidence leads us to the conclusion that there was ample and competent evidence to support the trial court's judgment. In particular, while J.D.A.G.'s testimony is inconsistent at times, it is not so inconsistent as to render it "inherently self-destructive."

Appellant J.M.G.'s argument is that J.D.A.G.'s testimony was often vague to the point of being contradictory, meandering, and at times, completely irrelevant. However, when dealing with extremely young victims of abuse, a certain degree of confusion and inconsistency is expected. *N.J.K.,* 139 S.W.3d at 256–57 ("We note that 'in cases involving such young victims and sensitive and embarrassing subject matter,' it is not uncommon for children's accounts of the abuse to contain some 'variations, contradictions or lapses in memory.' '[I]nconsistent or contradictory state-

---

opportunity to adequately cross-examine the witness both before the hearing and the trial

itself. § 491.680.

ments by a young child relating a sexual experience does not, in itself, deprive the testimony of all probative force.' ") (internal citations omitted).

Conversely, two portions of J.D.A.G.'s testimony were clear. First, using terms that were appropriate for his age, J.D.A.G. described sexual acts and the consequences of those acts with details that one would not expect a young child to have knowledge of absent personal experiences. Second, J.D.A.G. stated multiple times that J.M.G. engaged in those acts with J.D.A.G. and accurately described private and physical details about J.M.G. This testimony, if believed, was in and of itself sufficient to convict J.M.G.

Additionally, Lynne Dresser, the expert witness, also testified that J.D.A.G.'s revelations were consistent with a victim who had suffered similar abuse at his stage of development. The trial court was free to rely upon both J.D.A.G.'s testimony and Dresser's expert commentary about that testimony.

The record contains substantial evidence to support the trial court's judgment, and the judgment is not against the weight of the evidence. Therefore, the trial court's judgment is affirmed.

KAREN KING MITCHELL, Judge, and CYNTHIA L. MARTIN, Judge, concur.