**In the Interest of K.A.R., Appellant,**

**v.**

**JUVENILE OFFICER, Respondent.**

**No. WD 76169.**

Missouri Court of Appeals, Western District.

Oct. 29, 2013.

Sara Johnston and Loretta Burns–Becklew, Kansas City, MO, for appellant.

Daniel C. Berezoski and Edward E. Moore, Kansas City, MO, for respondent.

Before Division Four: JAMES E. WELSH, Chief Judge, Presiding, ALOK AHUJA, Judge and CYNTHIA L. MARTIN, Judge.

1. All statutory references are to RSMo 2000 as supplemented unless otherwise indicated.

2. We view the facts in the light most favorable to the trial court's judgment. *J.M.G. v. Juvenile Officer,* 304 S.W.3d 193, 195 (Mo.App. W.D.2009).

CYNTHIA·L. MARTIN, Judge.

K.A.R., a juvenile, appeals from the trial court's judgment sustaining the Juvenile Officer's second amended petition, which alleged that K.A.R. committed acts which would constitute the crime of statutory sodomy in the first degree if committed by an adult. On appeal, K.A.R. claims that the trial court (1) abused its discretion in admitting, and, thus, implicitly finding sufficient indicia of reliability of the Victim's prior out-of-court statements under section 491.075 [1] because the time, content, and circumstances of the Victim's statements did not provide sufficient indicia of reliability and the trial court made no finding as to the reliability of the statements; and (2) erred in sustaining the Juvenile Officer's second amended petition as to the allegations of statutory sodomy in the first degree because there was insufficient evidence to prove beyond a reasonable doubt that K.A.R. had deviate sexual intercourse with the Victim. We affirm.

**Factual and Procedural History** [2]

From December 2010 through April 17, 2012, the Victim resided with his mother ("Mother"),[3] her boyfriend, K.R., and K.A.R., K.R.'s son by a previous relationship.[4] The Victim shared a bedroom with K.A.R. In 2010, the Victim was five years old and K.A.R. was thirteen years old. During this time period, the Victim started exhibiting inappropriate sexual behavior at his elementary school and at home, which led to his suspension from school in April 2012. At that time, Mother and the Victim moved out of the residence.

3. The Victim and Mother share the same initials, J.B. Therefore, for clarity we refer to them only as Victim and Mother.

4. Mother and K.R. had two daughters together that also resided in the home as did several other children of Mother by other relationships.

In May 2012, Mother began taking the Victim to see a counselor at the Metropolitan Organization to Counter Sexual Assault ("MOCSA"). MOCSA referred the Victim to Truman Behavioral Health Services where he was interviewed by Dr. Ahmed Maher ("Dr. Maher"), a resident in psychiatry, and Dr. Martin Maldonado ("Dr. Maldonado"), a child psychiatrist, on August 29, 2012. During that interview, the Victim reported that: he had seen K.A.R. view pornography and hump the bed; K.A.R. had shown the Victim pornography; K.A.R. had shown the Victim his penis while watching pornography; K.A.R. put his penis, which was hard, in the Victim's mouth and that a waxy material came out from his penis onto the Victim's face; K.A.R. attempted anal sex with the Victim; K.A.R. had threatened to cut the Victim's private parts with a butter knife if he told anyone about this activity; and that the abuse occurred over a period of two years. Mother was present during the interview, but only Dr. Maher and Dr. Maldonado asked the Victim questions. Dr. Maldonado testified that the Victim seemed very afraid to talk about the subject of sexuality but repeated the disclosure of abuse multiple times in response to their questions. Dr. Maher met with the Victim again on October 3 and December 5, 2012. At the October 3 meeting, the Victim reported to Dr. Maher that he was having nightmares and was afraid of K.A.R.

On August 31, 2012, the Juvenile Officer filed its petition alleging that in and after December 2010, K.A.R., a juvenile, committed acts which would constitute the crime of statutory sodomy in the first degree if committed by an adult in that he had deviate sexual intercourse with the Victim who was then less than fourteen years old in violation of section 566.062. On September 7, 2012, the Juvenile Officer filed a first amended petition alleging two counts. In count one, it was again alleged that K.A.R. committed acts which would constitute the crime of statutory sodomy in the first degree if committed by an adult in that he had deviate sexual intercourse with the Victim who was then less than fourteen years old in violation of section 566.062, but added that K.A.R. committed deviate sexual intercourse by touching his penis to the mouth and anus of the Victim. In count two, it was alleged that K.A.R. was without proper custody, support or care for his well-being in that K.R. exhibits a pattern of neglect toward K.A.R. and his siblings.

On September 17, 2012, the Victim was interviewed by Brandy Hodgkin ("Hodgkin"), a forensic interviewer with the Child Protection Center. Prior to the interview, Hodgkin was informed that the Victim had previously disclosed attempted anal sex and oral sex. Hodgkin stated that the Victim was quiet and reserved but that he disclosed oral sex with K.A.R. and that he had been threatened with a knife. She stated she used non-leading, open-ended questions and that the Victim's disclosures to her were consistent with the information she had received prior to the interview.

On October 17, 2012, K.A.R. filed a motion in limine seeking a pre-trial hearing to determine the admissibility of the Victim's out-of-court statements pursuant to section 491.075. The Juvenile Officer filed a response requesting that the trial court deny the motion. The Juvenile Officer argued that admissibility of the statements should be determined during K.A.R.'s bench trial, citing *Kierst v. D.D.H.*, 965 S.W.2d 932, 937 (Mo.App. W.D.1998). On October 23, 2012, the trial court denied K.A.R.'s motion.

On November 16, 2012, the Juvenile Officer filed its second amended petition asserting the two counts previously asserted

in the first amended petition and adding a third count alleging that K.A.R. was in violation of the court's order regarding home detention. On December 20, 2012, the trial court held an adjudication hearing on the allegations of the second amended petition.[5] After hearing evidence, the trial court found the evidence adduced sustained the allegations in count one beyond a reasonable doubt and the allegations in count three by clear, cogent, and convincing evidence. The trial court ordered that K.A.R. be detained in the custody of K.R. on home detention with electronic monitoring pending the disposition hearing.

On February 7, 2013, the trial court held a disposition hearing. After hearing evidence, the trial court ordered K.A.R. committed to the Director of the Family Court Services for placement in a residential treatment facility but suspended execution of that sentence and placed K.A.R. on probation and in the custody of K.R.

K.A.R. appeals.

## Point I

For his first point, K.A.R. alleges that the trial court abused its discretion in admitting the Victim's prior out-of-court statements to Dr. Maher, Dr. Maldonado and Hodgkin under section 491.075,[6] because the time, content, and circumstances of the Victim's statements did not provide sufficient indicia of reliability and the trial court made no finding as to the reliability of the statements. We disagree.

### Standard of Review

■■■ We review a trial court's decision to admit a child's out-of-court statements under section 491.075 for an abuse of discretion. *State v. Redman*, 916 S.W.2d 787,

792 (Mo. banc 1996). "The trial court is vested with discretion to determine whether the statements contain sufficient indicia of reliability to justify their admission under section 491.075. The trial court will be held to have abused that discretion only if its findings are not supported by substantial evidence." *State v. Heckenlively*, 83 S.W.3d 560, 567 (Mo.App. W.D.2002) (internal citation omitted). " 'If reasonable persons can differ about the propriety of the action taken by the trial court, then it cannot be said that the trial court abused its discretion.' " *N.J.K. v. Juvenile Officer*, 139 S.W.3d 250, 256 (Mo.App. W.D.2004) (citations omitted). "Even if the trial court abuses its discretion in allowing evidence in, appellant must show the admission of the evidence was prejudicial to be entitled to relief." *State v. Sprinkle*, 122 S.W.3d 652, 658 (Mo.App. W.D.2003).

### Analysis

■■■ "In general, out-of-court statements are not admissible as evidence." *J.M.G. v. Juvenile Officer*, 304 S.W.3d 193, 196 (Mo.App. W.D.2009).

> Under section 491.075.1, an out-of-court statement by a child under the age of [fourteen] relating to an offense under Chapter 566 is admissible in evidence in criminal and juvenile proceedings as substantive evidence to prove the truth of the matter asserted, but only if the court first finds that "the time, content, and circumstances of the statement provide sufficient indicia of reliability."

*N.J.K.*, 139 S.W.3d at 256 (footnotes omitted).

---

5. The Juvenile Officer dismissed count two which alleged abuse and neglect against K.R.

6. As noted by both parties, pursuant to section 491.699, the provisions of section

491.075 relating to the admissibility of statements made by a child under the age of twelve apply to proceedings in juvenile court.

In evaluating these statements, trial courts utilize a "totality of the circumstances test" and apply a non-exclusive list of the factors outlined in *Idaho v. Wright*, 497 U.S. 805, 821, 110 S.Ct. 3139, 111 L.Ed.2d 638 (1990). The courts look at (1) the spontaneity and consistency of the statement; (2) the mental state of the minor giving the statement; (3) whether the minor has a motive to fabricate; and (4) whether the minor uses terms unexpected of a child of that age.

*J.M.G.*, 304 S.W.3d at 197 (citations omitted). "The unifying principle behind these factors is that they all relate to whether the child was 'particularly likely to be telling the truth when the statement was made.' " *N.J.K.*, 139 S.W.3d at 256 (citation omitted).

■ K.A.R. first asserts that the trial court erred in failing to consider or address whether the Victim's out-of-court statements were sufficiently reliable. In support, K.A.R. states that his pre-trial motion in limine for a pre-trial hearing under section 491.075 to determine the admissibility of the Victim's out-of-court statements was not addressed before or during the trial but was summarily denied. K.A.R. argues that this demonstrates that the trial court abused its discretion because it did not consider whether the Victim's out-of-court statements provided sufficient indicia of reliability.

A similar issue was raised in *Kierst* where the guardian ad litem claimed that the trial court failed to make a specific finding at a separate hearing regarding whether the child's out-of-court statements were sufficiently reliable for admission under section 491.075. 965 S.W.2d at 934. There, the trial court decided that because it was a court-tried case, there was no need to hold a separate hearing on reliability and that it would decide the reliability of each out-of-court statement as it was offered. *Id.* at 936. On appeal, this court held that where a case is tried to the court, "a formal hearing on the child's reliability ... is not required." *Id.* at 938. Moreover, this court held that the trial court's "reliability ruling was implicit in its admission of and reliance on the testimony." *Id.*

Here, during trial, the trial court stated that "with a bench trial, I take everything under advisement to determine whether or not under 491 I'm going to allow or consider it as far as my ruling on the whole trial is concerned." Like *Kierst*, implicit in the trial court's admission of and reliance on the Victim's out-of-court statements was the trial court's reliability ruling. Thus, there is no error in the trial court's failure to make express findings regarding the reliability of the Victim's out-of-court statements.

Next, K.A.R. claims that the Victim's out-of-court statements were not sufficiently reliable and should not have been admitted because (1) they were neither spontaneous nor consistent, (2) they were made a significant amount of time after the alleged abuse occurred, and (3) the circumstances preceding the Victim's disclosure displayed a motive to fabricate. We disagree.

■ K.A.R. first claims that the Victim's out-of-court statements to Dr. Maher and Dr. Maldonado were not spontaneous because Mother prompted the discussion of K.A.R. and that the Victim looked to Mother to assess her reactions to his statements. No evidence supports K.A.R.'s assertions. Mother testified that she did not mention her suspicions regarding K.A.R. to the doctors until after the Victim disclosed the abuse, and Dr. Maldonado did not recall hearing that information at all. While Dr. Maher's testimony indicates that Mother mentioned K.A.R.'s name, in front of the Victim, at the beginning of the

interview, Dr. Maher only recalled Mother identifying K.A.R. as a member of the household in which Victim was living, without providing any further information. Nonetheless, Dr. Maher testified that in interviewing the Victim he did so without any suspect in mind. Moreover, Dr. Maher testified that although Mother was present for the interview, she never prompted the Victim to say that K.A.R. was responsible or anything else; and that Mother did not ask the Victim any questions in the interview, volunteer any information to the Victim, maintain eye contact with the Victim, or speak to the Victim at all in the interview.

Likewise, Dr. Maldonado testified that Mother never told the Victim what to say. He acknowledged that the Victim looked at Mother when she became upset after hearing the disclosure of the abuse but that the doctors "did not think that he was waiting for her to give an answer." Dr. Maldonado testified that they do not use leading questions and that the Victim repeated the disclosure of abuse several times. Similarly, Mother testified that the Victim disclosed the abuse readily to the doctors and that the Victim was the first person to bring up the name K.A.R.

Thus, a finding that the Victim's out-of-court statements were spontaneous is supported by substantial evidence in the record. There was no evidence presented that the Victim's statements were prompted, cajoled, or coaxed. *See State v. Gillard,* 986 S.W.2d 194, 197 (Mo.App. S.D. 1999).

K.A.R. also argues that spontaneity decreases if a child first denies that any abuse takes place. However, K.A.R. fails to allege that the Victim first denied any abuse took place prior to his out-of-court statements. Instead, K.A.R. argues that the lack of disclosure while receiving therapy through MOCSA demonstrates that

his later disclosure to the doctors was somehow not spontaneous. A lack of a disclosure of abuse and a denial of abuse are not the same. K.A.R. offers no further argument or authority in support of this position.

■ K.A.R. argues that the Victim's out-of-court statements were also inconsistent in that the Victim reported to Dr. Maher and Dr. Maldonado that K.A.R. made him perform oral sex which resulted in K.A.R.'s ejaculation of waxy material onto the Victim's face and that K.A.R. attempted anal sex with Victim, but that in the interview with Hodgkin, the Victim left out the information about the waxy material on his face.

We disagree that the omission of the information about the waxy material renders these two out-of-court statements inconsistent. The fact that the Victim did not report anything about the waxy material in the second interview is not so inconsistent as to suggest a lack of reliability. As this court noted in *N.J.K.,* 139 S.W.3d at 257, " 'there is a fundamental difference between inconsistency and describing different details at different times.' " (citation omitted). Here, it appears that this is an instance of the Victim not reporting every single detail every time he recounted the events of abuse. Moreover, "it is not uncommon for [young victim's] accounts of the abuse to contain some 'variations.' " *Id.* (citation omitted). Thus, a finding that the Victim's out-of-court statements were consistent is supported by substantial evidence.

■ K.A.R. next argues that the Victim's out-of-court statements were made a significant amount of time after the alleged abuse occurred so as to be unreliable. We disagree. Here, the Victim reported that he was abused over a two year period. The Victim resided with K.A.R. over a

period of a year and four months. Within four months of being removed from the home and the bedroom he shared with K.A.R., the Victim made his disclosure of abuse to Dr. Maher, Dr. Maldonado, and his Mother. K.A.R. fails to cite any authority for his position that a period of four months between abuse and disclosure renders the disclosure unreliable. This argument is without merit.

 Finally, K.A.R. argues that the circumstances preceding the Victim's initial disclosure displayed a motive to fabricate. We disagree. K.A.R. claims that Mother's custody battle with K.R. over their two daughters and Mother's initial suspicion of K.A.R. as the abuser created an atmosphere with adequate motivation for the Victim to fabricate. K.A.R. fails to cite to any testimony in support of this argument. There was no evidence presented that the Victim was even aware of a custody battle between Mother and K.R. Moreover, Mother testified that despite her suspicions of K.A.R., she never asked the Victim if K.A.R. had abused him, and only asked if anyone had done anything to him. We find no evidence in the record to suggest otherwise.

The trial court did not abuse its discretion in its admission of the Victim's out-of-court statements. Point One is denied.

### Point II

In point two, K.A.R. asserts that the trial court erred in sustaining count one of the Juvenile Officer's second amended petition because there was insufficient evidence to prove beyond a reasonable doubt that K.A.R. had deviate sexual intercourse with the Victim. In support, K.A.R. argues that (1) the Victim's out-of-court statements were inconsistent with and/or were recanted by his trial testimony; and (2) that there was no evidence of deviate sexual intercourse in that the Victim did

not testify that he experienced any pain. We disagree.

### Standard of Review

 "We review juvenile proceedings in the same manner as other court-tried cases." *C.L.B. v. Juvenile Officer*, 22 S.W.3d 233, 235–36 (Mo.App. W.D.2000). "The judgment below will not be disturbed on appeal unless it is against the weight of the evidence, erroneously declares the law, or erroneously applies the law." *Id.* (citing *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976)). "The determination on appellate review is whether there is sufficient evidence from which the fact finder could have found the defendant guilty beyond a reasonable doubt." *J.N.C.B. v. Juvenile Officer*, 403 S.W.3d 120, 124 (Mo. App. W.D.2013). "[I]n determining the sufficiency of evidence, we view the evidence and reasonable inferences which may be drawn therefrom in the light most favorable to the verdict and we ignore all evidence and inferences to the contrary." *C.L.B.*, 22 S.W.3d at 236. " 'The credibility of witnesses and the weight to be given their testimony is a matter for the trial court, which is free to believe none, part, or all of their testimony.' " *Id.* (citation omitted).

### Analysis

K.A.R. was charged with committing the act of statutory sodomy in the first degree under section 566.062 by having deviate sexual intercourse, by touching his penis to the mouth and anus of the Victim, who was then less than fourteen years old. "A person commits the crime of statutory sodomy in the first degree if he has deviate sexual intercourse with another person who is less than fourteen years old." Section 566.062.1. Deviate sexual intercourse is defined as "any act involving the genitals of one person and the hand, mouth, tongue, or anus of another person ...

done for the purpose of arousing or gratifying the sexual desire of any person." Section 566.010(1).

■ Here, the Victim testified at trial that K.A.R. did not touch him as alleged, thus recanting his previous accusations. Despite his recantation, however, his out-of-court statements describing sexual abuse by K.A.R. were admitted as substantive evidence at trial. The Victim statements to Dr. Maher, Dr. Maldonado, and Hodgkin disclosed that K.A.R. sexually abused him by inserting his penis into his mouth and attempting anal sex. These witnesses testified at trial regarding the content of the Victim's prior out-of-court statements.

In addition to the admission of multiple out-of-court statements by the Victim, there was other evidence supporting the State's allegations. *See State v. Wadel,* 398 S.W.3d 68, 79 (Mo.App. W.D.2013) (evidence of victim's behavior and fear of alleged abuser noted as additional evidence supportive of allegation of first degree statutory sodomy). Mother testified regarding incidents where the Victim displayed inappropriate sexual behavior. Mother testified that prior to residing with K.A.R., the Victim had not been involved in any sexual incidents at school but that in 2011, while residing with K.A.R., the Victim's behavior changed dramatically when he was suspended from school for sexually touching other children and using sexual language. Mother testified that after she and the Victim moved from that residence in 2012, the Victim was not involved in any other sexual incidents as school. Mother also testified that while they resided with K.A.R., she had confronted him about child pornography that she discovered on the home computer and that K.A.R. admitted he viewed it and stated that he was addicted to pornography. Additionally, Dr. Maher testified that at his second meeting with the Victim, the Victim reported that he was afraid of K.A.R.

This evidence was sufficient evidence from which the fact finder could have found K.A.R. guilty beyond a reasonable doubt of statutory sodomy in the first degree.

■ K.A.R. argues that because the Victim recanted at trial and his two prior out-of-court statements varied, the Victim's out-of-court statements alone were insufficient to leave a reasonable trial court "firmly convinced of K.A.R.'s guilt." Setting aside the fact that the Victim's prior out-of-court statements were not the only evidence indicative of K.A.R.'s guilt, we disagree with the premise of K.A.R.'s argument. This court has recently addressed a nearly identical argument in *Wadel,* where we set forth the history and distinctions between the corroboration rule and the destructive contradictions doctrine. 398 S.W.3d at 79. As similar issues are raised here, we set forth our previous holding, in pertinent part:

> Both rules find their genesis in sexual offense cases, where the testimony of the victim was considered highly suspect.... But the rules have branched apart, and though similar, are no longer one and the same.

> The corroboration rule is more properly referred to as the corroboration exception to the general rule that in sexual offense cases, the victim's testimony alone is sufficient to sustain a conviction even if uncorroborated. This exception applies *only* where the victim's trial testimony is in conflict with physical facts, surrounding circumstances, and common experiences such that its validity is doubtful. This exception does not apply merely because the testimony of the victim includes inconsistencies or contradictions as to minor

points of a nonessential nature because conflicts of a nonessential nature and issues regarding the credibility of witnesses are matters for the [fact-finder] to determine.

The destructive contradictions doctrine, on the other hand, provides that a *witness's testimony* loses probative value when his or her statements *at trial* are so inconsistent, contradictory, and diametrically opposed to one another that they rob the testimony of all probative force. Like the corroboration exception, the destructive contradictions doctrine has very limited application. It does not apply to contradictions as to collateral matters, or to inconsistencies not sufficient to make the testimony inherently self-destructive. *Likewise, the doctrine does not apply where the victim's statements are inconsistent with those of other witnesses or to contradictions between the victim's trial testimony and prior out-of-court statements.* The doctrine is not a corroboration rule. And, unlike the corroboration exception, the destructive contradictions doctrine is no longer limited to cases involving sexual offenses.

While both doctrines apply to claims of insufficient evidence, and both are premised upon contradictions and inconsistencies, the basis for the conflicts at issue differs. With the corroboration exception, the inconsistencies at issue arise between the stated allegations and known physical facts, surrounding circumstances, or common experiences; whereas the destructive contradictions doctrine requires the inconsistencies to arise within the statements made during the trial testimony of a single witness.

*Id.* at 79–80 (internal citations and quotations omitted) (emphasis added).

In *Wadel,* two children gave multiple out-of-court statements regarding abuse but then at trial both denied abuse occurred. *Id.* at 77. On appeal, Wadel, argued that there was insufficient evidence to support the convictions of first degree statutory sodomy of both victims because both recanted and there was no evidence presented to corroborate their out-of-court statements to the contrary. *Id.* at 78. Wadel cited and relied on cases involving the corroboration exception but failed to identify a single aspect of either victim's allegations that could be considered to be in conflict with physical facts, surrounding circumstances, or common experiences. *Id.* at 81. Thus, this court held that Wadel failed to demonstrate the basic premise for invoking the corroboration exception, and thus, the general rule applied meaning that the victim's allegations alone in the absence of corroboration were sufficient to sustain his conviction. *Id.*

This court noted, however, that because Wadel's argument is premised upon the victim's recantations at trial, it appears that Wadel was truly relying on the destructive contradictions doctrine and the fact that the victims offered inconsistent accounts of Wadel's conduct. *Id.* But, as the court explained, "the destructive contradictions doctrine applies only to contradictory trial testimony, not 'to contradictions between the victim's trial testimony and prior out-of-court statements.'" *Id.* (citation omitted). Thus, this court held the inconsistencies relied upon by Wadel are not sufficient to invoke the destructive contradictions doctrine and his argument is without merit. *Id.*

Likewise, here, K.A.R. cites the destructive contradictions doctrine (and case law including *State v. Case,* 140 S.W.3d 80, 92 (Mo.App. W.D.2004)) (which cites *State v. Goudeau,* 85 S.W.3d 126 (Mo.App. S.D. 2002)) but similarly relies on inconsistencies between the victim's trial testimony and prior out-of-court statements. Like

this court held in *Wadel*, the Southern District held in *Goudeau* that the destructive contradictions doctrine has no application when inconsistencies are between trial testimony and pretrial statements. 85 S.W.3d at 131.[7] Thus, K.A.R.'s argument is similarly without merit as these inconsistencies are not sufficient to invoke the destructive contradictions doctrine.

K.A.R. concedes that some Missouri cases have held that out-of-court statements are sufficient to sustain a conviction even where the child recants at trial but attempts to distinguish them from the present case on the basis that the Victim's two out-of-court statements were inconsistent with each other in that "each time he described the alleged abuse he gave varying accounts of the incident." We disagree and find the conclusory nature of this argument insufficient. K.A.R. fails to even allege in what way the out-of-court statements varied such that they were inconsistent. Nonetheless, we note that the Victim gave two out-of-court statements, one to Dr. Maher and Dr. Maldonado and the other to Hodgkin. In both statements, the Victim reported that K.A.R. had oral sex with the Victim and, thus, were not inconsistent. Moreover, we note that to the extent there were additional details given in one statement and not in another, this court has held that "when dealing with extremely young victims of abuse, a certain degree of confusion and inconsistency is expected." *J.M.G.*, 304 S.W.3d at 197. " '[I]n cases involving such young victims and sensitive and embarrassing subject matter,' it is not uncommon for children's accounts of the abuse to contain some 'variations, contradictions or lapses in memo-

ry.' " *N.J.K.*, 139 S.W.3d at 256–57 (citation omitted).

In a two sentence argument, K.A.R. appears to assert that where a child recants at trial, corroboration is required. In support, K.A.R. cites *N.J.K.*, 139 S.W.3d at 260, where a child's out-of-court statement combined with step-mother's testimony about the scene she observed on the night of the incident was held as sufficient evidence. A similar argument was made in *Wadel* and rejected by this court. 398 S.W.3d at 81–82 ("[W]e reject [Wadel's] invitation to recognize a further exception, mandating corroboration in the face of recanted testimony."). Moreover, as previously noted, we reject K.A.R.'s characterization that the only evidence to support the conviction was the out-of-court statements of the Victim. In addition to the admission of the out-of-court statements by the Victim, there was other evidence supporting the State's allegations including the Mother's testimony regarding Victim's inappropriate sexual behavior and K.A.R. usage of computer pornography as well as Dr. Maher's testimony that the Victim feared K.A.R. *Wadel*, 398 S.W.3d at 79.

Finally, K.A.R. argues that there was no evidence of deviate sexual intercourse or any sexual intercourse with the Victim. This is simply not true. Dr. Maher, Dr. Maldonado, and Hodgkin each testified that the Victim reported that K.A.R. had oral sex with him. K.A.R. argues that the Victim never reported any pain during the alleged anal sex. K.A.R. fails to demonstrate or cite any authority supporting his argument that evidence of pain on the part of Victim is required or even compelling. Physical pain is not an essential

---

7. K.A.R. also cites *In the Interest of T.L.C.*, 950 S.W.2d 293, 295 (Mo.App. W.D.1997), another case involving the application of the destructive contradictions doctrine. However, T.L.C. has no application here as it dealt only with the alleged inconsistencies in two witnesses' trial testimony.

element of the offense of statutory sodomy in the first degree. This argument is without merit.

We conclude that there was sufficient evidence presented at trial from which the trial court could conclude beyond a reasonable doubt that K.A.R. committed the crime charged. Point Two is denied.

### Conclusion

We affirm the trial court's judgment.

All concur.