In the Interest of: C.L.B., Appellant,

v.

**JUVENILE OFFICER, Respondent.**

No. WD 57240.

Missouri Court of Appeals,
Western District.

July 18, 2000.

**234**

Martina L. Peterson, Kansas City, for appellant.

Donald Lee Cain, Kansas City, for respondent.

Before Presiding Judge VICTOR C. HOWARD, Judge JOSEPH M. ELLIS and Judge LAURA DENVIR STITH.

LAURA DENVIR STITH, Judge.

C.L.B. was on probation, and under the jurisdiction of the juvenile court, at the time he was alleged to have committed a robbery. The Juvenile Officer filed a motion to modify, asking the court to find not just that C.L.B. had violated his probation by committing the crime, but to adjudicate C.L.B.'s guilt of the crime. Accordingly, a trial was held, and the juvenile court found C.L.B. guilty of the lesser included offense of stealing from a person. Because C.L.B. was already under the court's supervision, the court applied a "clear and convincing evidence" standard of proof in reaching its determination of guilt.

On appeal, C.L.B. argues that, because the court below actually adjudicated his guilt of the crime of stealing, rather than merely finding that he had violated his probation by stealing, the court was required to apply the standard of proof beyond a reasonable doubt. He further argues that, under either standard of proof, the evidence was insufficient to sustain his conviction.

We agree with C.L.B. that, because he was not just found to have violated his probation, but was adjudicated guilty of the crime of stealing from a person, it was error to apply a clear and convincing evidence of proof; his guilt or innocence of a crime must be determined under a "beyond a reasonable doubt" standard of proof. Because we believe that an issue of fact exists as to whether the juvenile court would find C.L.B. guilty of stealing from a person if this standard had been applied, we reverse and remand for a new trial on this issue.

## I. FACTUAL AND PROCEDURAL HISTORY

On January 26, 1998, the Juvenile Officer filed a Petition alleging that C.L.B. had committed the class A misdemeanor of stealing, in violation of Section 570.030 RSMo Cum.Supp.1997, and asking that he be placed under the jurisdiction of the family court pursuant to Section 211.031(3) RSMo 1994. Family Court Judge Jay A. Daugherty found C.L.B. guilty of the offense, and committed him to the custody of the Juvenile Officer. The judge then suspended the execution of the commitment, placed C.L.B. on probation, and returned him to the custody of his father, subject to the supervision of the Juvenile Officer, until further order of the court.

On March 9, 1999, Donald L. Cain, attorney for the Juvenile Officer, filed a three-count Third Amended Motion to Modify, in which he asked the court to modify its previous disposition. Counts I and II alleged behavior injurious to the juvenile's welfare, in that C.L.B. had left home without his parents' permission and had left a halfway house without permission, and alleged that these acts constituted violations of C.L.B.'s probation. Count III alleged that C.L.B. had committed Robbery in the Second Degree, a Class B Felony, in violation of Section 569.030 RSMo 1994.

On April 19, 1999, a hearing was held before Family Court Judge Ronald R. Holliger. C.L.B. admitted the probation violations set out in Counts I and II, but denied he was involved in the robbery alleged in Count III. The parties then presented evidence on Count III, which showed as follows:

On February 20, 1999, Marilyn Walker completed her grocery shopping at the Price Chopper grocery store at 9550 Blue Ridge Boulevard in Kansas City, Missouri and exited the store. At that time, her purse was in her shopping cart in front area where small children usually sit. As Ms. Walker positioned the cart near her car and opened her trunk to load her groceries, she noticed that two young black males walked out of Price Chopper together and were headed down one of the aisles in the parking lot. She had begun to put her groceries in the car when she noticed one of the boys, whom she identified at trial as C.L.B., approaching her. Ms. Walker believed C.L.B. had come too close to her, and began to turn around to see what had happened to the other boy, when the other boy grabbed her purse from the cart and took off running.

While the boy who had taken the purse ran away, C.L.B. casually walked away toward some other stores in the parking lot. Ms. Walker finished putting her groceries in her car, locked the car trunk and asked a man whether he could call the police, as her purse had just been stolen. She then yelled at C.L.B. to come back. He replied that he did not take her purse and kept walking. Because she had seen C.L.B. and the other boy together, she believed C.L.B. would know the name of the boy who took her purse. She therefore followed C.L.B., grabbed his arm and demanded that he remain there until the police arrived. In an effort to pull away, he punched her in her side and pushed her. She grabbed him again and he again resisted in similar fashion. At this point, Ms. Walker took the bag of groceries C.L.B. had been carrying, went into the nearby Conoco convenience store, and asked one of the employees to call the police.

C.L.B. followed Ms. Walker into the Conoco store and demanded that she return his groceries. When she would not return them to him, he left. Ms. Wilson testified that after C.L.B. left, she watched him cross to the east side of Blue Ridge Boulevard, near some other stores. She saw him meet up there with the boy who had taken the purse, and observed them walk together toward a bus stop.

The boys were still across the street when the police arrived. The boy who had taken the purse ran away at that point, but C.L.B. remained at the bus stop. He was questioned by police, and admitted that he knew the person who took the purse, but denied having anything to do with the robbery. Ms. Walker's purse was recovered in the same area where she claims to have seen the two boys together.

Defense counsel argued that, in determining whether this evidence was sufficient to prove the allegations of Count III, the judge was required to apply a "beyond a reasonable doubt" burden of proof, because C.L.B.'s guilt of the crime of robbery was being adjudicated. The Juvenile Officer argued that, under our decision in *C.E.E. v. Juvenile Officer*, 727 S.W.2d 451 (Mo.App. W.D.1987), the applicable standard of proof was clear and convincing evidence. The judge agreed with the Juvenile Officer. Applying a clear and convincing evidence standard, he found C.L.B. guilty of the lesser included offense of stealing from a person in violation of Section 570.030, sustained the Motion to Modify on all three counts, and committed C.L.B. to the McCune School for Boys until further order of the court. This appeal followed.

## II. LEGAL ANALYSIS

### A. Standard of Review.

We review juvenile proceedings in the same manner as other court-tried

cases. *In Interest of J. M.*, 812 S.W.2d 925, 934 (Mo.App. S.D.1991). The judgment below will not be disturbed on appeal unless it is against the weight of the evidence, erroneously declares the law, or erroneously applies the law. *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976). "The credibility of witnesses and the weight to be given their testimony is a matter for the trial court, which is free to believe none, part, or all of their testimony." *Herbert v. Harl*, 757 S.W.2d 585, 587 (Mo. banc 1988). Finally, in determining the sufficiency of evidence, we view the evidence and reasonable inferences which may be drawn therefrom in the light most favorable to the verdict and we ignore all evidence and inferences to the contrary. *N.J.B. v. State of Missouri*, 941 S.W.2d 782, 783 (Mo.App. W.D.1997).

*B. The "Beyond a Reasonable Doubt" Standard Applies.*

In Point I, C.L.B. points out that the court below *did not merely find that he had violated his probation* by assisting in the alleged robbery, *but actually found him guilty of stealing.* He suggests that this constitutes an adjudication of guilt and hence, under the United States Supreme Court's decision in *In Re Winship*, 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970), requires application of a "beyond a reasonable doubt" standard of proof.

*In Re Winship* addressed whether the due process clause of the United States Constitution requires application of a standard of proof beyond a reasonable doubt in order to *adjudicate* whether a juvenile is guilty of an act which would be a crime if committed by an adult. In determining this issue, the United States Supreme Court first noted:

> The case presents the single, narrow question whether proof beyond a reasonable doubt is among the "essentials of due process and fair treatment" required *during the adjudicatory stage* when a juvenile is charged with an act which would constitute a crime if committed by an adult.

*In Re Winship*, 397 U.S. at 359, 90 S.Ct. at 1070 (emphasis added). Justice Brennan further clarified the Court's holding as follows:

> "[W]e are not here concerned with . . . the pre-judicial stages of the juvenile process, *nor do we direct our attention to the post-adjudicative or dispositional process.*" In New York, the *adjudicatory stage of a delinquency proceeding is clearly distinct from both the preliminary phase of the juvenile process and from its dispositional stage. Similarly, we intimate no view concerning the constitutionality of the New York procedures governing children "in need of supervision."*

*Id.* (citations omitted; emphasis added).

*In Re Winship* thus specifically declined to address whether the states must apply a beyond a reasonable doubt standard in the pre-adjudicatory or dispositional stages of their juvenile court processes. It did hold, however, that a beyond a reasonable doubt standard *must* be applied in the adjudicatory stage of a juvenile proceeding. The Missouri Supreme Court followed *In Re Winship* in *In Re Fisher*, 468 S.W.2d 198 (Mo.1971).

Counsel for the Juvenile Officer argues that this appeal is not governed by *In Re Winship*, but rather by this Court's previous decisions in *C.E.E.*, 727 S.W.2d at 453, and *N.J.B.*, 941 S.W.2d at 784. In *C.E.E*, as in this case, the juvenile was committed to the Division of Youth Services, but execution of his commitment was stayed and he was placed on probation in the custody of his father. The next year, the Juvenile Officer filed a Motion to Modify in which he sought revocation of C.E.E.'s probation and commitment back to the Division of Youth Services, based on allegations that C.E.E. had committed the crimes of burglary in the first-degree, a Class B felony, and stealing, a Class A misdemeanor. Finding that the issue before it was whether C.E.E., a juvenile already under the court's jurisdiction, had committed a pro-

bation violation, the juvenile court applied a clear and convincing evidence standard as required by Rule 117.05(b), which was then in effect. Rule 117.05 then provided:

> a. In all hearings upon a petition *alleging as a basis for jurisdiction* that the juvenile has committed an act or acts which would be a crime if committed by an adult, such acts or acts *shall be proved beyond a reasonable doubt.*
>
> b. *In all other hearings the facts alleged shall be proved by clear and convincing evidence.*

**Rule 117.05** (repealed January 1, 1999) (emphasis added).

On appeal, we affirmed the application of the clear and convincing evidence standard, stating that, because the juvenile was already under the juvenile court's jurisdiction, since he "was not being tried on a criminal charge," and "[i]nasmuch as this hearing is *in effect a probation revocation hearing,* the standard of proof as set forth in Rule 117.05(b) applies." *C.E.E.,* 727 S.W.2d at 452 (emphasis added).

We agree with *C.E.E.'s* holding that, where the issue before the court is whether a juvenile's probation shall be revoked, then it is appropriate to apply a clear and convincing evidence standard, and nothing in *In Re Winship's* analysis of the application of the due process clause to juvenile proceedings requires proof of guilt beyond a reasonable doubt. It is on this basis that cases such as *C.E.E.* have held that a clear and convincing evidence standard can properly be applied when determining whether to revoke a juvenile's probation. Indeed, in the case of an adult defendant who has been placed on probation, that probation can be revoked based on proof by a preponderance of the evidence that the defendant committed a crime while on probation. *State ex rel. Cooper v. Hutcherson,* 684 S.W.2d 857, 858 (Mo.App. W.D. 1984). No authority is cited that a beyond a reasonable doubt standard should nonetheless be required in the equivalent situation in the case of a juvenile defendant's probation, and we would reject any claim

that *In Re Winship* requires proof beyond a reasonable doubt must be offered in order to revoke a juvenile's probation based on an alleged crime committed while on probation.

That is not the issue C.L.B. raises here, however. His counsel recognizes that a clear and convincing evidence standard would properly have been applied if the only issue below had been whether C.L.B. violated his probation by stealing. Both C.L.B. and the Juvenile Officer admit that the motion to modify was not simply used as a means of revoking C.L.B.'s probation in this case, however. To the contrary, the Juvenile Officer asked the court to actually find C.L.B. guilty of the crime of robbery, a crime committed while he was on probation, and the court did find him guilty of stealing from a person. *C.E.E.* is therefore not dispositive, for it dealt only with the standard of proof to be applied where evidence that a crime was committed is being used as a basis to revoke probation, not where such evidence is being used to actually find the juvenile guilty of a crime.

As the Juvenile Officer notes, *N.J.B.* does seem to suggest that a clear and convincing evidence standard is proper in the case of an allegation that a juvenile committed a crime while on probation, even when the judge is asked to determine the juvenile's guilt of the crime, and not merely whether probation should be revoked. *N.J.B.,* 941 S.W.2d at 784–85. However, in so doing, *N.J.B.* relies almost exclusively on *C.E.E.* and on Rule 117.05.

As *N.J.B.* itself notes, however, and as we indicated above, *C.E.E.* considered the hearing in the case before it to be "in effect a probation revocation hearing," and that is why it found a clear and convincing evidence standard to be proper. *C.E.E.,* 727 S.W.2d at 452. And, while former Rule 117.05(b) did provide that a clear and convincing evidence standard shall be applied in all hearings other than those alleging crimes as a basis for *jurisdiction* over

the juvenile, that Rule had been repealed prior to the trial of C.L.B. on the allegations at issue here, and therefore, even had it passed constitutional muster in this regard, it does not provide support for the argument that a clear and convincing evidence standard was appropriate in the case now before us.

■ We therefore must decide, as a matter of public policy and due process, whether a standard of proof of clear and convincing evidence can be applied to the adjudication of guilt or innocence of a juvenile who is already under the jurisdiction of the juvenile court, where, as here, the juvenile is accused of an act which would be a crime if committed by an adult. In determining this issue, it is important to note that, in the case of an adult, a conviction of a crime cannot result from a probation revocation hearing. At the hearing, the judge determines only whether it has been proved by a preponderance of the evidence that the probationer committed the crime, and if so, probation may be revoked. If the State wishes to also convict the probationer of the crime itself, allegedly committed during probation, that determination of guilt can only be made at a separate criminal trial at which a beyond a reasonable doubt standard would be applied. *See, e.g., Turner v. State,* 784 S.W.2d 342, 344 (Mo.App. S.D.1990).

Similarly, counsel for the Juvenile Officer admits that the court below would have been required by *In Re Winship* to apply a beyond a reasonable doubt standard if this crime were the initial basis for taking jurisdiction of C.L.B., as it would be an adjudication of guilt. But, he argues, because C.L.B. is already under the court's jurisdiction, then, unlike first offender juveniles, and unlike adults who are charged with the same crime, he can be convicted upon proof less than proof beyond a reasonable doubt. Counsel offers no rationale or authority for this distinction between the proof necessary to adjudicate the guilt of a juvenile under the juvenile court's jurisdiction, and the proof necessary to convict all other persons, other than the fact that *C.E.E.* and repealed Rule 117.05 appear to authorize this result. *C.E.E.'s* inapplicability has already been noted, however, and Rule 117.05 is no longer in effect.

Moreover, counsel admits that where, as here, a juvenile is actually adjudicated guilty of a crime committed while on probation, and not just determined to have violated his probation, then the collateral consequences of the court's determination will be identical to those which result when a juvenile not under the court's jurisdiction is adjudicated guilty of a crime. That is, *the result is not just a revocation of probation.* Rather, and in addition, the conviction may be used as a basis for deciding whether to certify the juvenile as an adult in the case of any future unrelated criminal proceedings, Sec. 211.071 RSMo Cum. Supp.1995; may be used to allow the records of the felony referral, otherwise closed, to be open to a court of general jurisdiction in future proceedings, Sec. 211.321 RSMo Cum.Supp.1995; and may be used to require the juvenile to register as a juvenile sex offender in the state of Missouri, were the juvenile charged with committing a sex-related offense which would be a felony if committed by an adult (of course, there is certainly no such allegation as to C.L.B. here), Sec. 211.425 RSMo Cum.Supp.1999.

Faced with these arguments, the juvenile officer was unable to defend the constitutionality of the distinction he asks us to draw between the standard of proof applicable to juveniles who first come before the juvenile court's authority and those already under it's jurisdiction, but merely argued that, because the trial court followed *N.J.B.* and Rule 117.05, we should affirm, for those authorities led the court below to believe that a beyond a reasonable doubt standard is only required when a juvenile initially comes before the juvenile court.

We reject *N.J.B.* and similar cases to the extent that they, or repealed Rule

117.05, could be said to provide that a clear and convincing evidence standard can be applied to the actual adjudication of guilt of a juvenile just because he was already under the court's jurisdiction at the time the new crime was allegedly committed. Their approach apparently resulted from a misreading of *In Re Winship*. As discussed above, *In Re Winship* says that a beyond a reasonable doubt standard must be applied "during the adjudicatory stage when a juvenile is charged with an act which would constitute a crime if committed by an adult." *In Re Winship*, 397 U.S. at 359, 90 S.Ct. 1068. Cases such a *N.J.B.* and Rule 117.05 are erroneous to the extent that they seem to equate this statement with a holding that we need only apply a beyond a reasonable doubt standard to the adjudication of the petition originally asserting the juvenile's guilt of an initial offense that would be a crime if committed by an adult. *In re Winship* does not limit the reach of the beyond a reasonable doubt standard of proof to only initial jurisdictional hearings, however. It says that a beyond a reasonable doubt standard must be applied *during the adjudicatory stage*, when the juvenile is charged with an act that would be a crime if committed by an adult.

It may be that, at the time that Rule 117.05 was adopted, motions to modify were not used to adjudicate guilt or innocence of other crimes, and that such adjudications were anticipated to occur only during the initial hearing which provided a basis for the court to take jurisdiction over the juvenile in the first instance. Whatever was the case at that time, however, counsel for C.L.B. alleges, and counsel for the Juvenile Officer confirms, that now motions to modify are used to do far more than merely modify the disposition made on the juvenile's original adjudication of guilt in the case which initially brought the juvenile within the juvenile court's jurisdiction.

Now, motions to modify are often also used to provide a forum for an adjudication of the juvenile's guilt of additional crimes occurring while the juvenile was under the court's jurisdiction. And, under his interpretation of Rule 117.05, the Juvenile Officer took the position that because he had charged a juvenile under the juvenile court's jurisdiction of a crime by means of a pleading denominated as a motion to modify, the standard of proof applicable to modifications of a juvenile's disposition would apply, even though the juvenile would in fact be charged with and actually found guilty of a separate crime.

■ This is a misuse of the motion to modify procedure. If that procedure is truly being used to modify a prior disposition based on a parole violation, then a clear and convincing evidence standard is proper. However, under *In re Winship*, the motion to modify procedure cannot properly be used to provide a forum for an adjudication of guilt of an act which would be a crime if committed by an adult, with all the collateral consequences of a conviction of that offense, unless a beyond a reasonable doubt standard is applied to that aspect of the trial.

We find no reason, either in common sense or as required under our constitutional precepts, for not providing a beyond a reasonable doubt evidence standard in the case of an adjudication of guilt of a child just because the child is already within the court's jurisdiction where the adjudication of guilt is a conviction for the commission of a criminal act carrying similar burdens on account of that conviction outside as well as inside the jurisdiction of the juvenile court.

For these reasons, the court below erred in failing to apply a beyond a reasonable doubt standard in determining C.L.B.'s guilt of the crime charged.

*C. Sufficiency of the Evidence.*

C.L.B. also argues that, because he was not involved in the act of taking Ms. Walker's purse, there was insufficient evidence upon which to find that his acts would have constituted a crime were he an adult, re-

gardless whether his actions are judged under a beyond a reasonable doubt standard or under a clear and convincing evidence standard. Specifically, he asserts that the Juvenile Officer showed only that he was present when the crime occurred and that he knew and talked with the perpetrator, and argues that his mere presence at the scene is not enough to support a finding that he was involved in the stealing of the purse.

While C.L.B. is correct in concluding that "[m]ere presence of the accused at the scene of the crime, even coupled with an opportunity to commit the crime, *will not alone* sustain a conviction, ... [p]articipation may be inferred and the evidence need not directly reflect the accused in the act of committing the crime with which he is charged." *State v. Oliver*, 791 S.W.2d 782, 788 (Mo.App. E.D.1990) (emphasis added). Indeed, "[s]uch inference may be drawn from the presence of the accused, conduct before and after the offense, and companionship before and after the offense." *Id.*

In this case, in addition to C.L.B.'s presence at the scene at the time the purse was taken, Ms. Walker did testify that both before and after the incident, she saw C.L.B. together with the individual who actually did take her purse. Ms. Walker believed that C.L.B.'s involvement in the crime was to distract her by coming close to her, thus allowing the other individual to take her purse. She also stated that, after the theft, she watched from the Conoco station as the two of them met in front of a strip mall across the street, which is where the police later found Ms. Walker's purse. Finally, she noted that after they left the strip mall across the street, they walked together toward a nearby bus stop.

From this evidence, the court below could have inferred that the reason C.L.B. walked near Ms. Walker was to distract her while his friend stole her purse, and that when he again associated with the perpetrator in a friendly way after the crime, he was acting in furtherance of this crime. Such inferences were not required, however, and contrary inferences could be drawn from the fact that C.L.B. did not run when the police came, even though the perpetrator did, and there was no evidence he shared in the proceeds, and his involvement in distracting the victim was unclear. While we believe that the evidence was sufficient to raise a question of fact as to C.L.B.'s guilt as an accomplice, in light of its relative weakness, we cannot say that the improper application of a clear and convincing evidence standard rather than a beyond a reasonable doubt standard did not affect the court's judgment. Accordingly, we reverse the court's judgment and remand for further proceedings in accordance with this opinion.

Judge JOSEPH M. ELLIS and Presiding Judge VICTOR C. HOWARD, CONCUR.