

# In the
# Missouri Court of Appeals
# Western District

IN THE INTEREST OF: B.O.,

              Appellant,

v.

JUVENILE OFFICE,

              Respondent.

WD82883

OPINION FILED:

FEBRUARY 25, 2020

Appeal from the Circuit Court of Daviess County, Missouri
The Honorable R. Brent Elliott, Judge

Before Division One: Thomas H. Newton, Presiding Judge, Mark D. Pfeiffer, Judge,
Anthony Rex Gabbert, Judge

B.O. appeals the circuit court's judgment finding that B.O., pursuant to Section 559.036,[1] violated his court-ordered probation agreement by failing to maintain satisfactory academic performance and school attendance, and violated Section 569.120, by, in concert with others, committing three counts of the class B misdemeanor of Property Damage in the Second Degree, if he were an adult. B.O. contends the circuit court 1) erred in committing B.O. to Division of Youth Services (DYS) without a dispositional hearing, 2) erred in finding B.O. committed property

---

[1] Unless otherwise noted, all statutory references are to the Revised Statutes of Missouri as updated through 2017.

damage in the second degree relating to a vehicle owned by Roni Betchel, and 3) erred in finding B.O. committed property damage in the second degree relating to a vehicle owned by Tina Ableidinger. We affirm in part and reverse in part.

**Background and Procedural Information**

On May 18, 2018, the Juvenile Division of the Daviess County Circuit Court found B.O. to be within the jurisdiction of the court after B.O. admitted to being beyond parental control pursuant to Section 211.031.1(2)(b) and violating compulsory school attendance laws pursuant to Section 211.031.1(2)(a). The court ordered B.O. be made a ward of the court and placed on probation for an indeterminate period of time under Juvenile Office supervision. B.O. remained in the custody of his legal guardian and was to complete twenty hours of community service and participate in counseling.

On March 4, 2019, the Juvenile Office moved to modify the court's previous order of disposition and requested B.O. be committed to the legal and physical custody of DYS for an indeterminate period of time. The allegations in the motion were that, 1) in violation of Section 559.036, B.O. committed a misdemeanor, if he were an adult, by violating condition #2 of his court-ordered probation agreement by failing to maintain satisfactory academic progress and school attendance by missing seventeen days of school without justification, 2) in violation of Section 569.120, B.O., in concert with others, committed the Class B Misdemeanor of Property Damage in the Second Degree, if he were an adult, by knowingly damaging the property of another by using a crowbar to break the front and rear driver side windows of a pickup owned by Roni Betchel, 3) in violation of Section 569.120, in concert with others, committed the Class B Misdemeanor of Property Damage in the Second Degree, if he were an adult, by using a crowbar to break the windshield and passenger headlight of a vehicle owned by Jim Harrington, and 4) in

2

violation of Section 569.120, in concert with others, committed the Class B Misdemeanor of Property Damage in the Second Degree, if he were an adult, by using a crowbar to break the front driver side and middle driver side window of a van owned by Tina Ableidinger.

On June 3, 2019, an adjudication hearing was held on the Juvenile Office's Motion to Modify.[2] After the adjudication hearing, but prior to the court entering Judgment, B.O.'s counsel advised the court that, if the court sustained the allegations, Counsel desired to make a dispositional argument against the Juvenile Office's recommendation of DYS custody. The court replied, "Okay. Anything further." The court then found all allegations in the Motion proven and, without further argument or evidence taken regarding disposition, placed B.O. in the legal and physical custody of DYS for an indeterminate period of time. This colloquy followed:

[B.O.'s COUNSEL]: Judge, I would just like to make a few comments about the disposition. I know you just ruled on that, but I would like to at least make an argument about that before he is actually committed. I think that this is a case, with restitution, he should be given the opportunity –

THE COURT: I just committed him. What do you mean?

[B.O.'s COUNSEL]: I understand. I was wanting to make an argument for the disposition portion of this in the event that you found he had violated. So I was making – my first argument was just about the evidence. Now I was going to make an argument on the disposition.

THE COURT: Okay. Well, your argument is noted, but it won't change my decision any.

---

[2] At the trial setting where all parties, including B.O., were present, the court inquired as to whether the issue was a truancy matter. The Juvenile Office advised that the original petition related to truancy, and at the time of the filing of the Motion to Modify, B.O. had missed seventeen days of school. Further, that B.O. was allegedly attending online classes, but the Juvenile Office had received no confirmation. The Juvenile Office advised that, additionally, the Motion to Modify involved delinquency violations of probation conditions involving property damages. The court stated: "Well, here's the bottom line: I'm going to set this for hearing. We're going to hear this case, and you're probably not going to like the result. If you want a hearing, you're going to get a hearing.

3

The court's "Order and Judgment of Disposition Committing Juvenile to Custody of Division of Youth Services" stated that the court had "received further evidence concerning the need of care and treatment which cannot be furnished by placing the juvenile in his own home, but which requires the care, custody and discipline of a facility of the Division of Youth Services because suitable community based treatment services would not be appropriate in this matter." The Judgment ordered B.O. detained until accepted by DYS, that DYS was to accept B.O. into a facility within ten business days of the order, and that the court's jurisdiction over B.O. would terminate upon B.O.'s receipt by DYS. This appeal follows.

**Standard of Review**

We review juvenile adjudication proceedings under the standard applied in other court-tried civil cases and will affirm the judgment unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law. *In re A.G.R.*, 359 S.W.3d 103, 108 (Mo. App. 2011). We consider the evidence in the light most favorable to the circuit court's ruling and ignore evidence to the contrary. *Id.* We review questions of law *de novo*. *Cosby v. Treasurer of State*, 579 S.W.3d 202, 206 (Mo. banc 2019).

**Point I – Dispositional Hearing**

In his first point on appeal, B.O. contends the circuit court erred in committing B.O. to DYS without a dispositional hearing, arguing this denied B.O. due process, denied B.O. a fundamentally fair dispositional hearing, and violated Rule 128.03.[3] B.O. argues that Rule 128.03 requires dispositional hearings to be on the record and grants juveniles the right to testify, present

---

[3] All rule references are to the Missouri Supreme Court Rules (2017) unless otherwise noted.

evidence, cross-examine witnesses, present arguments of law and fact, and present arguments concerning the weight, credibility, and effect of the evidence.

The Juvenile Office argues that a dispositional hearing was not required prior to the court ordering B.O. placed with DYS because B.O. had a prior dispositional hearing after he admitted to being beyond parental control and failing to attend school. The Juvenile Office contends that, at that time B.O. was made a ward of the court and, pursuant to Section 211.181, placed on probation for an indeterminate amount of time under the terms and conditions fixed by the Juvenile Office. Therefore, B.O. was only entitled to an adjudication hearing on the allegations in the Motion to Modify and not entitled to a dispositional hearing after the Motion was adjudicated. The Juvenile Office argues that Rule 119.03 simply states that a court may modify a judgment after a hearing on the record, and B.O. was provided an adjudication hearing on the allegations in the Motion to Modify.

The Juvenile Office further argues that Rule 128.03 provides that dispositional hearings "*may* be held" separate from or immediately following an adjudication hearing under Rule 128.02, arguing that the court may, therefore, choose to hold a dispositional hearing separate from, directly following, "or combined with" a hearing on a motion to modify. (Emphasis added).[4]

First, we disagree with the Juvenile Office's position that a dispositional hearing may, at the court's discretion, be melded with an adjudication hearing. Nowhere in the Missouri Supreme Court Rules is a "combined" hearing provided for, nor would such be practical where Rule 128.02.b provides that the "rules of evidence shall apply" in adjudication hearings, and Rule

---

[4] Although the Juvenile Office does not dispute that B.O. was denied a dispositional hearing, contending he was not entitled to one, this argument suggests an alternative claim that a dispositional hearing was actually provided B.O. during the adjudication hearing. There is no support in the record for this claim.

128.03.b states that the "rules of evidence do not apply" in dispositional hearings. We find Rule 128.02 dispositive of this issue. As applicable here it provides that, at an adjudication hearing in a proceeding under subdivision (2) or (3) of subsection 1 of Section 211.031, upon finding that any allegation in the petition *or motion to modify* is proved within the applicable standard of proof, the court shall make findings on the allegations in the petition *or motion to modify* that are proved and enter an order regarding whether the court has jurisdiction over the juvenile. *Id.* at 128.02 a, e. (Emphases added). Further,

> f.      If the dispositional hearing does not *immediately follow the adjudication hearing*, the court:
>
> (1) Shall continue or, if appropriate, amend any detention order;
>
> (2) May order a social study to be prepared pursuant to Rule 118,01; and
>
> (3) *Shall schedule the dispositional hearing*.

*Id.* (Emphases added). Hence, Rule 128.02 clearly mandates a separate dispositional hearing that must occur immediately following an adjudication hearing or at a later, scheduled, date. Rule 128.03 reiterates that the mandatory hearing may immediately follow or be held separate from the adjudication hearing and provides for how the court is to conduct such a hearing. It states, in relevant part:

> a.      A dispositional hearing in a proceeding under subdivision (2) or (3) of subsection 1 of section 211.031, RSMo, may be held separate from or immediately following an adjudication hearing held pursuant to Rule 128.02.
>
> b.      At such a dispositional hearing, the court shall receive evidence and, in accordance with the best interests of the juvenile, determine and make findings on the legal and physical custody of the juvenile and on the disposition to be imposed on the juvenile. The hearing shall be held on the record. The court may take judicial notice of the court's file. The rules of evidence do not apply. All parties shall be afforded the opportunity to testify, present evidence, cross-examine

6

witnesses, and present arguments of law and fact and arguments concerning the weight, credibility and effect of the evidence.

*Id.*

Second, we disagree with the Juvenile Office's position that Rule 119.03 provides that no dispositional hearing is required if adjudication is pursuant to a motion to modify. Rule 119.03.b states: "The court may modify a judgment or order *under which it has jurisdiction* over a juvenile after a hearing on the record or by agreement of all parties." (Emphasis added). The only grounds for which the court already had jurisdiction of B.O. were for status offenses – B.O.'s admissions of truancy and being beyond parental control. The "Comment" to Rule 119.03 states:

> This Rule 119.03 is not intended to suggest that a court without a hearing may modify a judgment or order so as to impose additional restraints upon the juvenile or upon the juvenile's parents, guardian or custodian, to deprive the juvenile's parents, guardian or custodian of custody of the juvenile, or to commit the juvenile to the division of youth services.

Here, B.O. was, in part, alleged to have committed a misdemeanor in violation of Section 559.036, if he were an adult, by violating condition #2 of his court-ordered probation agreement by failing to maintain satisfactory academic progress and school attendance. Section 559.036, however, regards probation revocation for criminal defendants and is inapplicable to juveniles. "Juvenile proceedings are civil, not criminal, and are focused on continuing care, protection, and rehabilitation of the juvenile, not punishment." *In Interest of A.C.C.*, 561 S.W.3d 425, 428 (Mo. App. 2018). B.O. was already under the jurisdiction of the court for lack of school attendance and the court ordered a specific disposition regarding that initial finding. The modification request with regard to B.O.'s lack of school attendance was, therefore, essentially a request to modify the court's previous disposition and present evidence as to why modification was justified – in this case, for violation of the Juvenile Office's terms of probation requiring school attendance. Because

7

the hearing on the modification request was essentially a dispositional hearing as it was a request to change the previous disposition with regard to B.O.'s failure to attend school, B.O. should have been given the opportunity under both Rule 119.03 and Rule 128.03 to present evidence and argument as to why a disposition of DYS custody was inappropriate.[5]  Here, the court deprived B.O.'s guardian of custody of B.O. and committed B.O. to DYS without B.O. being heard on this disposition.  We note that, if the Juvenile Office was attempting to adjudicate new allegations of truancy in the Motion to Modify, as it may have been attempting as evidenced by the Motion improperly charging B.O. with alleged misdemeanors for failure to attend school, a dispositional hearing would still be required pursuant to Rule 128.02, as discussed below.

Third, regardless of whether the Juvenile Office's motion was termed a "Motion to Modify Previous Order of Disposition," the hearing on the Juvenile Office's allegations of property damage was an adjudication hearing.  Property damage allegations, if proven, allow a court to assume jurisdiction of a juvenile under Section 211.031.1(3).  As discussed above, Rule 128.02 sets forth guidelines for adjudication hearings in proceedings under Section 211.031.1(2) or (3).  It states, in relevant part:  "At such an adjudication hearing, the court shall determine what allegations in the petition *or motion to modify* are admitted by the juvenile and receive evidence on the allegations that have not been admitted."  Rule 128.02.b.  (Emphasis added).  "All parties

---

[5] We note that Section 211.181.2, which regards dispositional orders regarding status offenses, states that execution of any order entered pursuant to this subsection, including a commitment to any state agency, may be suspended and the child placed on probation subject to conditions as the court deems reasonable.  "After a hearing, probation may be revoked and the suspended order executed."  *Id.*  Here, B.O. was not originally ordered into DYS custody with a suspended execution of that order, nor could he have been.  Under Section 211.181.2 (2)(a), a child may not be committed to DYS unless he/she is "presently under the court's supervision after an adjudication under the provisions of" Section 211.031.1(2) or (3).  B.O. was not presently under the court's supervision in May of 2018 when B.O. was found to be within the jurisdiction of the court after admitting to being truant and beyond parental control.

8

shall be afforded the opportunity to testify, present evidence, cross-examine witnesses, and present arguments of law and fact and arguments concerning the weight, credibility and effect of the evidence." *Id.* Further, after adjudicating the petition or motion to modify, a dispositional hearing shall be held. Rule 128.02 e, f. Hence, dispositional hearings are required where allegations are proven in either a petition *or* motion to modify filed pursuant to Section 211.031.1(2) or (3).

*C.L.B. v. Juvenile Officer*, 22 S.W.3d 233 (Mo. App. 2000), discusses that motions to modify were not historically used to adjudicate new allegations. *C.L.B.* involved Rule 117.05 (1995), now repealed, which provided that in all hearings upon a *petition* alleging as a basis for jurisdiction that the juvenile committed an act or acts which would be a crime if committed by an adult, such were to be proved beyond a reasonable doubt. *Id.* at 237 (Emphasis added). In "all other hearings the facts alleged shall be by clear and convincing evidence." *Id.* The Juvenile Officer in *C.L.B.* contended that, because the juvenile was already under the court's jurisdiction and committed a new crime while on probation, the lesser standard of clear and convincing evidence applied. *Id.* We disagreed stating:

> It may be that, at the time that Rule 117.05 was adopted, motions to modify were not used to adjudicate guilt or innocence of other crimes, and that such adjudications were anticipated to occur only during the initial hearing which provided a basis for the court to take jurisdiction over the juvenile in the first instance. Whatever was the case at that time, however, counsel for C.L.B. alleges, and counsel for the Juvenile Officer confirms, that now motions to modify are used to do far more than merely modify the disposition made on the juvenile's original adjudication of guilt in the case which initially brought the juvenile within the juvenile court's jurisdiction.

> Now, motions to modify are often also used to provide a forum for an adjudication of the juvenile's guilt of additional crimes occurring while the juvenile was under the court's jurisdiction. And, under his interpretation of Rule 117.05, the Juvenile Officer took the position that because he had charged a juvenile under the juvenile court's jurisdiction of a crime by means of a pleading denominated as a motion to modify, the standard of proof applicable to modifications of a juvenile's

9

disposition would apply, even though the juvenile would in fact be charged with and actually found guilty of a separate crime.

This is a misuse of the motion to modify procedure. If that procedure is truly being used to modify a prior disposition based on a parole violation, then a clear and convincing evidence standard is proper. However, under *In re Winship*, the motion to modify procedure cannot properly be used to provide a forum for an adjudication of guilt of an act which would be a crime if committed by an adult, with all the collateral consequences of a conviction of that offense, unless a beyond a reasonable doubt standard is applied to that aspect of the trial.

We find no reason, either in common sense or as required under our constitutional precepts, for not providing a beyond a reasonable doubt evidence standard in the case of an adjudication of guilt of a child just because the child is already within the court's jurisdiction where the adjudication of guilt is a conviction for the commission of a criminal act carrying similar burdens on account of that conviction outside as well as inside the jurisdiction of the juvenile court.

*Id.* at 239.

The Juvenile Office contends that *C.L.B.* holds that a juvenile's rights to a fair disposition after adjudication of a motion to modify are fully protected by using a beyond reasonable doubt standard when adjudicating the allegations. We disagree. The issues of disposition and/or dispositional hearings were not addressed in *C.L.B.* and Rule 128.02 clearly mandates that dispositional hearings *shall* occur after an adjudication on a *motion to modify* if the court determines that proven allegations bring the juvenile within the court's jurisdiction.

The Juvenile Office also contends that the court had ample evidence to determine an appropriate disposition based on the evidence presented at trial regarding B.O.'s probation violations and property damage, as well as the Social Investigation Summary filed by the Juvenile Office prior to the court initially taking jurisdiction of B.O. on the 2018 status offenses. Yet, the Social Investigation Summary from the prior adjudication recommended B.O. remain in the custody of his grandmother subject to supervision through the Juvenile Office. The Juvenile Office recommended a different disposition at B.O.'s trial on the Motion to Modify and the court accepted

10

the Juvenile Officer's recommendation of DYS custody. B.O. should have been given an opportunity to present his own evidence and argument and refute any evidence, argument, and recommendations of the Juvenile Office.[6] Rule 128.03.

The court erred in modifying the prior disposition and committing B.O. to DYS without conducting a dispositional hearing in compliance with Rules 128.02 and 128.03.

B.O.'s first point on appeal is granted.

### Points II and III – Sufficiency of the Evidence

In his second and third points on appeal, B.O. contends there was insufficient evidence to support that B.O. committed property damage in the second degree relating to vehicles owned by Roni Betchel and Tina Ableidinger.

"In determining whether sufficient evidence has been presented to sustain an adjudication in a juvenile proceeding, the trial court's decision must be given the same deference as it would be given in an adult criminal proceeding." *In re D.M.*, 370 S.W.3d 917, 922 (Mo. App. 2012) (superseded on other grounds). We view the evidence and reasonable inferences drawn therefrom in the light most favorable to the judgment, and ignore all evidence and inferences to the contrary. *Id.*

The evidence was that, on January 1, 2019, Daviess County Deputy Sheriff Larry Adams, Jr., was dispatched to 400 Forest Street, Jamesport, Missouri, in reference to a vandalized vehicle. When he arrived, he saw a white Chevrolet pickup truck that had damage to its windows. The driver's side window and the rear driver's side window were broken. Roni Betchel owned the pickup.

---

[6]Section 211.181 regards actions the court may take in its Order for disposition; it does not dispense with Rule 128.02 and 128.03 dispositional hearing requirements as suggested by the Juvenile Office.

Later that day, Adams was dispatched in reference to vandalism of a minivan owned by Jim Harrington which was parked in front of the Jamesport Tavern. The windshield and passenger side front headlight assembly were broken.

Adams next responded to an allegation of an assault that occurred in Jamesport, and spoke with Jason Turley who informed him of additional property damage. After speaking with Turley, Adams located a vandalized minivan belonging to Tina Ableidinger on West Auberry Grove. There was damage to the driver's and rear driver's side windows and the driver's side mirror assembly. On North Locust, Adams located a Ford pickup truck that had damage to the driver's side mirror. Turley told Adams that B.O. was present during all incidents of vandalism – that Turley, B.O., and J.R. (another juvenile) were together the entirety of the evening.

Turley testified that on December 31, 2018, he was cruising the back roads of Jamesport with B.O. and J.R. J.R. was driving, B.O. was in the front passenger seat, and Turley was in the back seat behind B.O. At some point, J.R. and B.O. used a crowbar and took turns bashing the driver's side windows of a white pickup truck. Turley believed the white truck belonged to someone he had attended school with whose name started with a "J." Later, "they started bashing more by the bar and to the tavern," including a minivan. While near the tavern, B.O. tried to hit the van with the crowbar while hanging from the window of the moving vehicle. B.O. dropped the crowbar and they stopped the car to retrieve it. J.R. hit the front windshield of the van with the crowbar as he ran back to the car. The trio drove on and went down a back street by a church, with B.O. hanging out the window hitting side mirrors on cars. Turley testified that he told J.R. and B.O. several times that he wanted to go home. Turley testified that, the following day, Turley went to B.O.'s home to advise B.O.'s mother about the vandalism, and was "grabbed up by his

12

stepdad and I had stitches in my arms." Turley stated that he then contacted the police about B.O.'s stepfather's assault as well as B.O.'s actions the previous evening.

B.O. argues on appeal that the Juvenile Office failed to present evidence sufficient to prove, beyond a reasonable doubt, that B.O. took part in property damage to the white pickup truck belonging to Roni Betchel and the minivan belonging to Tina Ableidinger. We disagree.

As relevant to B.O.'s appeal, the Juvenile Office's Motion to Modify alleged that B.O., in concert with others, committed the Class B Misdemeanor of Property Damage in the Second Degree, if he were an adult, by knowingly damaging the property of another by using a crowbar to break the front and rear driver side windows of a 2001 Chevrolet 2500 pickup owned by Roni Betchel. Further, that B.O., in concert with others, similarly damaged Tina Ableidinger's van. The damage allegedly occurred on December 31, 2018.[7]

The evidence at trial was that B.O. used a crowbar to break the windows of a white pickup on December 31, 2018, in Jamesport, Missouri. Turley testified that B.O. was responsible for breaking the windows in the "white Chevy." On January 1, 2019, police were dispatched to victim reports of property damage to vehicles; police were called to investigate the broken windows of Roni Betchel's white Chevrolet pickup, located on Forest Street, and the broken windshield and passenger side front headlight assembly of Jim Harrington's minivan, located near Jamesport Tavern. Reasonable inferences can be drawn from this evidence that B.O., either alone or with

---

[7] B.O. does not dispute that the Juvenile Office presented sufficient evidence to prove B.O. participated in property damage to Jim Harrington's minivan.

13

others, knowingly damaged Roni Betchel's white Chevrolet pickup.[8]

Regarding Tina Ableidinger's minivan, Deputy Adams was not even aware of damage to Ableidinger's minivan until Turley contacted him. Adams followed up on Turley's statements which led him to two more damaged vehicles, including Tina Ableidinger's minivan. At that time, Ableidinger had not yet reported damage to her vehicle. It can reasonably be inferred from this evidence that, because police only discovered the damage to Ableidinger's minivan after Turley reported B.O.'s behaviors to police and provided specific information regarding specific vehicle damage inflicted by B.O. and J.R., leading police to discover Ableidinger's damaged minivan, that B.O. took part in the damage to that minivan.

We find sufficient evidence from which a reasonable fact-finder could conclude that the Juvenile Office proved, beyond a reasonable doubt, that on December 31, 2018, in concert with others, B.O. committed the Class B Misdemeanors of Property Damage in the Second Degree, if he were an adult, by knowingly damaging Roni Betchel's and Tina Abliedinger's vehicles.

B.O.'s second and third points on appeal are denied.

### Conclusion

We conclude that sufficient evidence supported the court's Judgment finding B.O. committed the Class B Misdemeanors of Property Damage in the Second Degree, if he were an adult, by knowingly damaging Roni Betchel and Tina Abliedinger's vehicles. We conclude the circuit court erred in failing to conduct a dispositional hearing in compliance with Rules 128.02 and 128.03 after adjudicating the Juvenile Office's Motion to Modify. We reverse the circuit

---

[8] The court was free to disregard Turley's belief that the white Chevy pickup belonged to an individual Turley had attended school with whose name started with "J."

14

court's Judgment on this ground only and remand for a dispositional hearing in compliance with Rules 128.02 and 128.03.

_____
Anthony Rex Gabbert, Judge

All concur.