In the Missouri Court of Appeals
 Eastern District
 DIVISION THREE

IN THE INTEREST OF: J.T.J. ) No. ED108812
 )
 ) Appeal from the Circuit Court
 ) of St. Louis County
 )
 ) Honorable Sandra Farragut-Hemphill
 )
 )
 ) FILED: February 16, 2021

 Introduction

 J.T.J. appeals from the juvenile court’s order for certification (the “Order”) allowing the

transfer of jurisdiction over J.T.J. from the juvenile court to the court of general jurisdiction for

prosecution as an adult. J.T.J. raises two points on appeal. Point One maintains the trial court

plainly erred in issuing the Order because the basis for the transfer was conduct alleged in a

motion to modify rather than in a petition as denoted in Rule 129.011 and Section 211.071.2

Point Two argues counsel was ineffective in failing to object to the transfer on the same basis.

Because the juvenile court retained exclusive jurisdiction, and modification motions are

appropriate filings to allege new conduct that would potentially subject the juvenile to

prosecution as an adult, the juvenile court did not lack authority under Section 211.071 and Rule

129.01 to conduct certification proceedings and transfer J.T.J. to the court of general jurisdiction,

1
 All Rule references are to Mo. R. Juv. P. (2016), unless otherwise noted.
2
 All Section references are to RSMo (2016), unless otherwise noted.
and we deny Point One. Because counsel will not be found ineffective in failing to raise a

meritless objection, and an objection on identical grounds to those raised in Point One would be

meritless, we deny Point Two. Accordingly, we affirm the judgment of the juvenile court.

 Factual and Procedural History

 J.T.J. was born in 2004. In 2018, the Juvenile Office filed a petition (the “Petition”) in

the juvenile court alleging J.T.J. committed second-degree burglary, first-degree property

damage, and misdemeanor stealing. The Juvenile Office amended the Petition to further allege

two counts of being habitually absent from home. Following a hearing at which the juvenile

court determined that the allegations in the Petition and its amendment were true, the juvenile

court found J.T.J. guilty on two counts of delinquency and two status offenses. The juvenile

court determined it had supervision over J.T.J. and placed J.T.J. in his mother’s custody. At two

subsequent review hearings, the juvenile court found it continued to retain jurisdiction.

 On March 20, 2019, the Juvenile Office filed a motion to modify the previous order of

disposition, alleging that J.T.J. had committed other acts involving injuries to his welfare or to

the welfare of others, specifically possession of a controlled substance and unlawful use of a

weapon. In two subsequent amendments, the Juvenile Office moved to amend the modification

motion to add an allegation for tampering in the second degree and then moved to amend the

modification motion to bring additional charges of murder in the first degree, tampering in the

second degree, and resisting arrest. After filing a motion to dismiss the Petition to allow for

prosecution under the general law, the Juvenile Office filed the present motion to dismiss the

motion to modify and second amendment to modify the Petition in order to allow for prosecution

of J.T.J. under general law (the “Motion to Modify”).

 The juvenile court held a certification hearing on the Juvenile Office’s Motion to Modify

seeking certification of J.T.J. for transfer to a court of general jurisdiction for prosecution as an

 2
adult under general law. J.TJ. did not object to the juvenile court’s authority to proceed with the

certification hearing. At the hearing, J.T.J. was represented by counsel and had the opportunity

to call witnesses and present evidence. The Deputy Juvenile Officer testified regarding whether

J.T.J. met the statutory criteria for certification for transfer under Section 211.071.

 Following the certification hearing, the juvenile court noted the seriousness of the alleged

offenses, the viciousness, force, and violence of the alleged murder, and that there was a pattern

of escalating delinquent offending. The juvenile court also considered J.T.J.’s prior experience

with the juvenile justice system as well as his age, sophistication, and maturity. On February 25,

2020, the juvenile court granted the Motion to Modify and certified transfer of J.T.J. to the court

of general jurisdiction. J.T.J. now appeals.

 Points on Appeal

 J.T.J. brings two points on appeal. Point One maintains the juvenile court plainly erred in

entering the Order transferring J.T.J. to a court of general jurisdiction because Rule 129.01 and

Section 211.071 require the transfer be based upon the filing of a petition rather than a motion to

modify. Correspondingly, Point Two argues the case should be remanded to the juvenile court

due to ineffective assistance of counsel because counsel failed to object to the lack of jurisdiction

on the basis that Rule 129.01 and Section 211.071 require the transfer be based upon the filing of

a petition rather than a motion to modify.

 Standard of Review

 “A judgment dismissing a juvenile from the juvenile division’s jurisdiction is final and

appealable.” D.E.G. v. Juvenile Officer of Jackson Cty., 601 S.W.3d 212, 218 (Mo. banc 2020).

“We review juvenile adjudication proceedings under the standard applied in other court-tried

civil cases and will affirm the judgment unless there is no substantial evidence to support it, it is

against the weight of the evidence, or it erroneously declares or applies the law.” B.O. v.

 3
Juvenile Office, 595 S.W.3d 506, 509 (Mo. App. W.D. 2020) (internal citation omitted). “We

consider the evidence in the light most favorable to the [juvenile] court’s ruling and ignore

evidence to the contrary.” Id. (internal citation omitted).

 However, where the issues on appeal pertain to the interpretation of rules and statutes,

these issues present questions of law, and we review them de novo. McGuire v. Kenoma, LLC,

447 S.W.3d 659, 662 (Mo. banc 2014); B.O., 595 S.W.3d at 509 (internal citation omitted).

 We have the discretion to review unpreserved claims for plain error. See Mo. R. Civ. P.

84.13(c) (“Plain errors affecting substantial rights may be considered on appeal, in the discretion

of the [C]ourt, though not raised or preserved, when the [C]ourt finds that manifest injustice or

miscarriage of justice has resulted therefrom.”). In exercising our discretion to review

unpreserved claims to ensure due process and fair treatment in juvenile adjudications, we first

inquire whether the juvenile court committed a plain error that is “evident, obvious and clear.”

In re J.L.T., 441 S.W.3d 183, 186 (Mo. App. E.D. 2014) (internal quotation omitted). If error is

found, “the second step is to determine whether the error resulted in manifest injustice or a

miscarriage of justice.” Id. (internal quotation omitted).

 Discussion

I. Point One––The Juvenile Court’s Authority to Transfer Jurisdiction

 J.T.J. challenges the Order on procedural grounds. Specifically, J.T.J. reasons that the

juvenile court lacked the authority to transfer jurisdiction to a court of general jurisdiction

because such transfer may be sought only by the filing of a petition, and not by filing a motion to

modify a prior disposition. J.T.J. cites Rule 129.01 and Section 211.071 in support of his

argument. Because J.T.J. did not object to the juvenile court’s authority to conduct the

certification hearing on whether the transfer should be granted, J.T.J. acknowledges that his

 4
claim is unpreserved and seeks plain-error review. See Mo. R. Civ. P. 84.13(c); In re J.L.T., 441

S.W.3d at 186.

 “This Court’s primary rule of statutory interpretation is to give effect to legislative intent

as reflected in the plain language of the statute at issue.” D.E.G., 601 S.W.3d at 219 (internal

quotation omitted). “The rules of statutory interpretation are not intended to be applied

haphazardly or indiscriminately to achieve a desired result. Instead, the canons of statutory

interpretation are considerations made in a genuine effort to determine what the legislature

intended.” Id. (internal quotation omitted). Where the plain language of the statute is clear and

unambiguous, “there is no need for this Court, or any other, to engage in a policy discussion or

analysis of other jurisdictions in order to effectuate the legislature’s intent.” Id. The same

general guidelines of statutory interpretation apply to the interpretation of procedural rules.

McGuire, 447 S.W.3d at 662 (internal citation omitted) (noting we review interpretation of the

rules of the Supreme Court of Missouri by applying the same principles used for interpreting

statutes).

 Chapter 211 concerning juvenile proceedings directs us to liberally construe its statutory

provisions. Section 211.011 (“The purpose of this chapter is to facilitate the care, protection and

discipline of children who come within the jurisdiction of the juvenile court. This chapter shall

be liberally construed, therefore, to the end that each child coming within the jurisdiction of the

juvenile court shall receive such care, guidance and control as will conduce to the child’s welfare

and the best interests of the state[.]”). Section 211.071 governs the certification procedure for

transferring a juvenile’s jurisdiction from the juvenile court to the court of general jurisdiction to

allow the State to prosecute the juvenile as an adult under the general law:

 If a petition alleges that a child between the ages of twelve and seventeen has
 committed an offense which would be considered a felony if committed by an adult,

 5
 the court may, upon its own motion or upon motion by the juvenile officer, the child
 or the child’s custodian, order a hearing and may, in its discretion, dismiss the
 petition and such child may be transferred to the court of general jurisdiction and
 prosecuted under the general law[.]

Section 211.071 (emphasis added). Rule 129.01 accords with Section 211.071 and provides:

 When a petition alleges that a juvenile has committed an act for which the juvenile
 may be transferred to a court of general jurisdiction to be prosecuted under general
 law, the court, at any time prior to commencement of the hearing on the petition,
 shall, when required by law, and may, upon its own motion or upon motion by the
 juvenile officer, the juvenile or the juvenile’s parent, guardian or custodian, order
 that a hearing be held to determine in the discretion of the court whether the juvenile
 is a proper subject to be dealt with under the juvenile code.

Rule 129.01 (emphasis added). “Under the procedure set forth in [S]ection 211.071, the juvenile

court may dismiss the petition and ‘transfer the child’ to a court of general jurisdiction to be

prosecuted under the general law.” State v. Nathan, 404 S.W.3d 253, 259 (Mo. banc 2013).

“When that occurs, the ‘jurisdiction of the juvenile court over that child is forever terminated’

unless the child is found not guilty in circuit court.” Id.

 Here, the Juvenile Office filed a Petition that brought J.T.J. under the jurisdiction of the

juvenile court. Following an adjudication, the juvenile court determined that it retained

jurisdiction over J.T.J. The juvenile court made the same finding in subsequent review hearings

addressing J.T.J.’s conduct. Thereafter, while the juvenile court retained exclusive jurisdiction

over J.T.J., the Juvenile Office moved to modify the Petition to allege new criminal conduct as

well as to move to transfer jurisdiction to a court of general jurisdiction allowing J.T.J. to be

prosecuted as an adult under the general law. On appeal, J.T.J. contends that because the newly

alleged conduct supporting transfer to a court of general jurisdiction was raised in the Motion to

Modify rather than in a new petition, Section 211.071 and Rule 129.01 are not satisfied.

 We recognize that “motions to modify were not historically used to adjudicate new

allegations.” B.O., 595 S.W.3d at 512 (citing C.L.B. v. Juvenile Officer, 22 S.W.3d 233, 239

 6
(Mo. App. W.D. 2000)). However, our statutory and regulatory interpretation must be guided by

precedential authorities. As the Western District recently noted, “motions to modify are used to

do far more than merely modify the disposition made on the juvenile’s original adjudication of

guilt in the case which initially brought the juvenile within the juvenile court’s jurisdiction.”

B.O., 595 S.W.3d at 512 (quoting C.L.B., 22 S.W.3d at 239). Critically to the present case,

“[n]ow, motions to modify are often also used to provide a forum for an adjudication of the

juvenile’s guilt of additional crimes occurring while the juvenile was under the court’s

jurisdiction.” Id. (quoting C.L.B., 22 S.W.3d at 239). These cases suggest that our statutorily-

mandated liberal construction of the statute and rule at issue permits the accepted practice of

using modification motions to bring new allegations of conduct that could subject a juvenile who

is already under the jurisdiction of the juvenile court to transfer for prosecution under general

laws. See id. (citing C.L.B., 22 S.W.3d at 239). It is not disputed that the juvenile court retained

exclusive jurisdiction over J.T.J. from the disposition of the offenses originally alleged in the

Petition. Given this fact, the Juvenile Office appropriately filed the Motion to Modify to allege

new offenses that could support certification for transfer to a court of general jurisdiction. See

id. (citing C.L.B., 22 S.W.3d at 239).

 Importantly, the juvenile court’s jurisdiction over J.T.J. was not limited to any of the

offenses alleged in the Petition or its many amendments or modifications; rather, the juvenile

court exercised jurisdiction over J.T.J. as an individual. See Nathan, 404 S.W.3d at 259 (“[T]he

certification procedure created in section 211.071 pertains to individuals, not to specific conduct,

crimes or charges.”). “Nothing in the language of [S]ection 211.071 allows the juvenile court to

dismiss some portions of a petition but proceed on others, and nothing allows the juvenile court

to relinquish its jurisdiction over a child for some conduct but retain that jurisdiction for other

 7
conduct.” Id. Prior to the conduct allegations underlying the Juvenile Office’s decision to seek

certification of J.T.J. for transfer to the court of general jurisdiction, J.T.J. committed multiple

prior offenses that placed him under the continuing jurisdiction of the juvenile court. See id.

The juvenile court’s continuing, exclusive jurisdiction over J.T.J. in this case contrasts with fact

patterns in which jurisdiction was interrupted or otherwise divested, justifying the need for a new

petition to reestablish jurisdiction. See, e.g., D.E.G., 601 S.W.3d at 214 (noting that where the

juvenile court dismissed the first petition, divesting its jurisdiction so that the State could

prosecute the juvenile in general court yet the State failed to prosecute, the Juvenile Office filed

a new petition in the juvenile court to allege new offenses); Matter of Care & Treatment of

D.E.K., No. ED108158, 2020 WL 7502299, at *3 (Mo. App. E.D. Dec. 22, 2020) (noting that

where a petition was dismissed without prejudice, the only way to reestablish the circuit court’s

jurisdiction over the individual was to refile the petition). Here, jurisdiction over J.T.J. with

regard to his prior and newly alleged conduct remained with the juvenile court until the juvenile

court dismissed the entire matter and transferred its jurisdiction over J.T.J. to the general court.

See Nathan, 404 S.W.3d at 259. Thus, no irregularity in procedure, statute, or rule arose such

that the juvenile court lacked authority to conduct a certification hearing and grant the request for

transfer. J.T.J.’s arguments to the contrary are unavailing. Here, the statutory and regulatory

requirement that a petition be filed to bring the juvenile offender under the authority of the

juvenile court was met because there was an initial Petition bringing J.T.J. under the jurisdiction

of the juvenile court. The Juvenile Office appropriately raised new allegations in its Motion to

Modify the juvenile court’s existing order. See Section 211.071; Rule 129.01; Nathan, 404

S.W.3d at 259; B.O., 595 S.W.3d at 512 (quoting C.L.B., 22 S.W.3d at 239). The juvenile court

 8
committed no error, plain or otherwise, in granting the judgment ordering J.T.J. be transferred

for prosecution as an adult under the general law.

 We further note that J.T.J. is unable to demonstrate the manifest injustice required to

prove plain error. See In re J.L.T., 441 S.W.3d at 186 (internal citation omitted). J.T.J. does not

allege that the juvenile court held an improper or insufficient certification hearing so as to

implicate violations of due-process procedural safeguards for juvenile proceedings. See B.O.,

595 S.W.3d at 510–11 (holding that an adjudication hearing was not an adequate substitution for

a rule-mandated dispositional hearing, at which the juvenile should have been entitled to present

his own evidence and argument). The potential “misuse” of the motion-to-modify procedure

identified in B.O. and C.L.B. concerned the use of a motion to modify to lower the burden of

proof for the newly alleged offenses or to avoid holding a separate dispositional hearing. See id.

at 512 (citing C.L.B., 22 S.W.3d at 329) (rejecting the Juvenile Office’s position that no

dispositional hearing is required if adjudication is pursuant to a motion to modify rather than a

petition). Moreover, both Western District cases contemplate that a motion to modify may be

used to adjudicate new offenses that could subject a juvenile to be tried as an adult so long as the

proper procedures are followed, including applying the correct evidentiary standard and holding

a dispositional hearing following adjudication. See B.O., 595 S.W.3d at 511, 512 (citing C.L.B.,

22 S.W.3d at 239) (holding that the beyond-a-reasonable-doubt standard must be applied for the

motion-to-modify procedure to properly provide a forum for the adjudication of guilt of an act

which would be a crime if committed by an adult). Here, the record does not show nor does

J.T.J. claim that the Motion to Modify was misused to provide an insufficient forum to protect

J.T.J.’s rights through the juvenile court’s certification procedures. Although J.T.J. called no

witnesses, J.T.J. was afforded a fair and meaningful opportunity to defend against the Juvenile

 9
Office’s allegations, and thus J.T.J. fails to show how the disposition of his certification

proceeding would be different if the Juvenile Office had filed a new petition rather than a motion

to modify. See In re J.L.T., 441 S.W.3d at 186.

 Because the juvenile court retained exclusive jurisdiction over J.T.J. and because

modification motions are appropriate filings to allege new conduct that would potentially subject

the juvenile to prosecution as an adult under the general law, the juvenile court did not lack

authority under Section 211.071 and Rule 129.01 to conduct the certification procedure and

transfer J.T.J. to the court of general jurisdiction. See D.E.G., 601 S.W.3d at 219; B.O., 595

S.W.3d at 509. Accordingly, the juvenile court did not plainly error. In re J.L.T., 441 S.W.3d at

186.

II. Point Two––Ineffective Assistance of Counsel

 In Point Two, J.T.J. asserts counsel was ineffective in failing to object to the transfer of

jurisdiction because Rule 129.01 and Section 211.071 require the transfer be based upon the

filing of a petition rather than a motion to modify.

 Preliminarily, the Juvenile Office contends that J.T.J.’s claim of ineffective assistance of

counsel is not cognizable on direct appeal. A juvenile has a due-process right to counsel in a

juvenile proceeding, a right which “would be hollow were there no accompanying requirement

counsel be effective.” D.C.M. v. Pemiscot Cty. Juvenile Office, 578 S.W.3d 776, 782 (Mo. banc

2019) (internal quotation omitted) (granting an evidentiary hearing on remand to a juvenile who

claimed ineffective assistance of counsel on appeal from his juvenile proceedings). Although

“no statute or case from [the] Court provides a mechanism for a committed juvenile to raise an

ineffective[-]assistance[-]of[-]counsel claim[,]” the Supreme Court of Missouri ultimately

reasoned that “[w]hen deciding whether claims for ineffective assistance of counsel can be

addressed on direct appeal, the pertinent question is whether the record is sufficient to address

 10
the claim.” Id. Here, because Point One is dispositive of the underlying substantive claim in

Point Two, we may resolve the ineffective-assistance-of-counsel claim. See id.

 To prevail on a claim for ineffective assistance of counsel, an appellant must show both

that “(1) his or her counsel failed to exercise the level of skill and diligence that a reasonably

competent counsel would in a similar situation, and (2) he or she was prejudiced by the failure.”

McFadden v. State, 553 S.W.3d 289, 298 (Mo. banc 2018) (internal quotation omitted). To

overcome the strong presumption that counsel performed reasonably, an appellant must point to

“specific acts or omissions of counsel that, in light of all the circumstances, fell outside the wide

range of professional competent assistance.” Id. (internal quotation omitted). Counsel will not

be found ineffective for failing to make a meritless objection. Id. at 317 (citing Tisius v. State,

519 S.W.3d 413, 429 (Mo. banc 2017)).

 In this case, J.T.J. claims counsel was ineffective for failing to object to the juvenile

court’s authority to initiate certification proceedings on the same basis that we addressed in Point

One. Thus, because we find the juvenile court retained authority to proceed in certifying J.T.J.

for transfer to a court of general jurisdiction from new conduct alleged in the Motion to Modify,

counsel’s objection on those grounds would be meritless and thus would not constitute deficient

performance. See McFadden, 553 S.W.3d at 317 (citing Tisius, 519 S.W.3d at 429).

Accordingly, J.T.J. has not shown reversible error on the basis of ineffective assistance of

counsel. See D.C.M., 578 S.W.3d at 782.

 Conclusion

 The judgment of the juvenile court is affirmed.

 _______________________________
 KURT S. ODENWALD, Judge

Angela T. Quigless, P.J., concurs.
James M. Dowd, J., concurs.

 11